### DETROIT FIRE & MARINE INSURANCE CO. v. HARTZ.

1. TAXATION—INSURANCE COMPANIES.

   1 Comp. Laws, § 3834, providing that, in computing the taxable property of an insurance company, the value of its real property shall be taken from its net assets above liabilities, and the remainder shall be the amount of personalty for which it shall be assessed, indicates an intention to tax the property of the company, and not a design to impose a franchise tax.

2. SAME—REINSURANCE RESERVE—EXEMPTIONS.

   The reinsurance reserve fund of an insurance company is not a

debt in the ordinary acceptation of the term, nor is it such a *bona fide* indebtedness as would entitle a taxpayer to an exemption of an equal amount of credits under subdivision 5 of section 3832, 1 Comp. Laws.

3. SAME—PERSONALTY—UNITED STATES BONDS—MANDAMUS.

Where, in assessing the personal property of an insurance company, the assessors have determined its assets from the report of the insurance commissioner, as directed by statute, and there is included in the assets $120,389 of United States government bonds, and the liabilities include an item of $241,727.72 reinsurance reserve fund, *mandamus* will not lie to compel the assessors to deduct the amount of the bonds from the taxable personal property.

*Certiorari* to Wayne; Rohnert, Frazer, Carpenter, and Hosmer, JJ. (Brooke and Donovan, JJ., dissenting). Submitted October 7, 1902. (Calendar No. 19,444.) Decided March 30, 1903.

*Mandamus* by the Detroit Fire & Marine Insurance Company against John C. Hartz and others, composing the board of assessors of the city of Detroit, and the common council of said city, to compel the reduction of an assessment against relator. From an order denying the writ, relator brings *certiorari*. Affirmed.

*Moore & Goff*, for relator.

*P. J. M. Hally* (*Timothy E. Tarsney*, of counsel), for respondents.

HOOKER, C. J. The relator is an insurance company. The law under which it is taxed reads as follows :

"In computing the taxable property of insurance companies organized under the laws of this State, the value of the real property on which a company pays taxes shall be deducted from its net assets above liabilities, as determined and shown by the last report of the commissioner of insurance, and the remainder shall be the amount of personal property for which the company shall be assessed." 1 Comp. Laws, § 3834.

The report of the commissioner, upon which the assess-

ment complained of was based, shows an excess of assets over liabilities of $1,076,643.09. Of the assets, $368,-878.84 consisted of real estate, and $120,389 of United States bonds, while in the liabilities was an item of $241,-727.72 for "amount required to reinsure outstanding risks."

Section 3834 clearly indicates an intention to tax the property of insurance companies, not a design to impose a franchise tax. It provides a way in which the value of their personal property may be ascertained by the assessor, and the validity of the rule was sustained in *Michigan Mut. Life-Ins. Co.* v. *Hartz*, 129 Mich. 104 (88 N. W. 405). In this case the assessors have followed the direction of the law.

It may be contended that the law has adopted this as the method most likely to result in getting at a fair valuation of the personal property of such a company, and that no inquiry can be made into the character of the personal estate whereby any portion of it can be deducted from the assessment. But if this is not so, and the assessors should have taken out the $120,389 representing the United States bonds, they were equally at fault in deducting as an indebtedness the item of $241,727.72. The grounds on which it is asserted that this is an indebtedness, to be deducted in accordance with the provisions of 1 Comp. Laws, § 3831, subd. 6, and 1 Comp. Laws, §§ 3832, 3842, are: *First*, that it is treated as a liability by the company and insurance commissioner, for the purposes of bookkeeping and a financial report, which is perhaps proper enough; and, *second*, for the reason that the policies of the company are subject to cancellation, and unearned premiums may in that event be demandable by the insured.

Neither one of these justifies such an assertion. The fund called the "reserve fund" is the property of the company. For the purpose of protection to patrons of the company, the law requires it to be kept in a fund called a "reinsurance reserve fund," so that the company may

have the means to reinsure its risks if necessary, which it is given power to do; but its character is not changed on that account. See 2 Comp. Laws, § 5169. It is not a debt in any ordinary acceptation of the term, nor is it under the terms of section 3832. It cannot be called a "*bona fide* indebtedness owing by the taxpayer," such as is mentioned in subdivision 5 of said section. Again, it is true that upon cancellation of a policy the company must refund a part of the premium unearned. It has contracted so to do upon that contingency. The premium paid has become the property of the company, however, and we may take judicial notice that only a part of it will ever be paid back to the insured upon cancellation. It is a remotely contingent liability, but cannot be dignified by the name "*bona fide* indebtedness due or to become due," which is the term used in the statute to describe such exemptions. So that, in any view of this case, relator is not entitled to relief. The writ of *mandamus* is a discretionary writ. The court should not use it to compel the reduction of the assessment to the amount of the United State bonds, if it is true that more than that amount has already been deducted as credits.

The order of the circuit court is affirmed.

MOORE, GRANT, and MONTGOMERY, JJ., concurred.