MICHIGAN MUTUAL LIFE-INSURANCE CO. *v.* COMMOM COUNCIL OF DETROIT.

TAXATION—LIFE-INSURANCE COMPANIES—RESERVE FUND.

The reserve fund of a life-insurance company is properly included among its liabilities in determining the net assets of the company for the purpose of taxation under 1 Comp. Laws, § 3834.

*Certiorari* to Wayne; Brooke, J. Submitted June 2, 1903. (Calendar No. 19,973.) Decided June 15, 1903.

*Mandamus* by the Michigan Mutual Life-Insurance Company against the common council and the board of assessors of the city of Detroit to compel the reduction of an assessment against relator. From an order granting the writ, respondents bring *certiorari*. Affirmed.

*C. A. Kent*, for relator.

*Timothy E. Tarsney*, for respondents.

MOORE, J. An assessment for personal property was made against the relator of $6,936,584.87. Upon application to the circuit court this amount was reduced to $2,055.05. This action of the circuit judge is sought to be reviewed by the writ of *certiorari*.

The facts are not in dispute. The December, 1902, report of the relator to the commissioner of insurance showed its gross assets to be $7,777,714.86. When its liabilities are deducted, its surplus is $404,269.90. The real estate was shown to be valued at $402,214.85, which, deducted from its net assets, left $2,055.05, which amount the court below found to be the amount of the personal property which should be assessed against the company. It is the claim of the respondents that relator should be assessed for personal property to the full amount of its

gross assets, less the value of its real estate. It is claimed subdivision 5 of section 3832, 1 Comp. Laws, should apply as to exemptions, and that the reserve fund of the company does not represent a debt due or to become due, within the meaning of the statute, which may be deducted from the assets, but represents a contingent liability only; citing the recent case of *Detroit Fire & Marine Ins. Co.* v. *Hartz*, 132 Mich. 518 (94 N. W. 7). We will refer to that case later. It is the claim of relator that, even if subdivision 5 of section 3832 is to control this assessment, the reserve fund represents debts which should be exempt from taxation. The following cases would seem to sustain that contention.

In discussing the question of whether the reserve fund of a life-insurance company should be exempt from taxation under a general law applying to all taxpayers, the court in *Alabama Gold Life-Ins. Co.* v. *Lott*, 54 Ala. 499, used the following language:

"To contract obligations that shall be discharged in money, payable upon the happening of the death of those whose lives are insured, or other designated future events, in consideration of premiums to be in the meantime periodically paid to the companies, is the proper and especial business of life-insurance associations. Their success and prosperity, when honestly and prudently managed, are measured by the number and amount of such obligations created by the policies they issue. To be indebted is, therefore, their normal condition, a condition necessary to their healthful vitality, while their actual wealth at any time consists only of the surplus of their assets (composed almost entirely of credits) over and above their indebtment at the same time.

"Of course, the indebtment of such a company is not identical with the aggregate of all the sums for which its policies are issued; for, while these are running to maturity, they bring into the company a stream of the premiums in consideration of which they were issued, and which, being added to those that have previously flowed in, constitute the supply out of which the company discharges the frequent demands arising out of the expiring policies, and the dividends that may be due to stockholders, as well as

its current expenses. This supply should always exceed the amount of estimated present indebtment at any time, the proper provision for which is supposed to be the fund known as 'the premium reserve,' which, however, may be embraced in and be a part of the general assets of the company. The amount of this fund depends upon the amount of the policies outstanding, payable in the future, generally soon after the death of persons on whose lives they are given, and is determined by men skilled as actuaries, who ascertain, according to certain rules or methods of computation, what is at any time the present value of all such outstanding policies, or (what is equivalent thereto) the sum that is required to safely reinsure them; and this sum or value, representing what all the policies are worth at the particular time, or what other insurance companies would charge for taking the same risks, is the measure of the company's indebtedness at that time to its policy holders, and is habitually set down in the annual or other periodical statements required in many of the States by law to be made of the assets and liabilities of life-insurance companies, as an item, and the principal item, of present indebtedness. The amount of the liabilities upon all the outstanding policies is, of course, many times greater; and by an unusual mortality in a particular year the losses of a company might amount, and its indebtedness be increased, to a larger sum than its estimated 'reserved fund.' But this fund is doubtless generally adequate, and the method of ascertaining it is probably as accurate as any that can be devised under the direction of a court, or be used by a company desirous to do right, of determining the amount of its present indebtedness at any particular time.  *  *  *

"A life-insurance company, therefore, when its solvent credits are assessed for taxation under a statute which declares that from them 'the indebtedness of the taxpayer shall be deducted, and that the excess only shall be taxed,' ought to be allowed to have deducted therefrom its 'premium reserve.' Unless this be done, an invidious discrimination will be made against institutions which it cannot be supposed the legislature intended to tax out of existence."

The same question was presented to the supreme court of Iowa in *Equitable Life-Ins. Co.* v. *Board of Equalization.* The court at first held according to the contention of the respondents here. A rehearing was ordered

(74 Iowa, 178 [37 N. W. 141]), and, after very elaborate arguments, the court held that the reserve fund of the company represented its indebtedness to its policy holders, and should be exempt from taxation; quoting with approval the case of *Alabama Gold Life-Ins. Co. v. Lott*, *supra*. This case was again followed in *Hawkeye Ins. Co. v. Board of Equalization*, 75 Iowa, 770 (37 N. W. 966).

The legislature of this State recognizes the fact that a premium paid to a life-insurance company does more than simply pay for a period of time equal to the interval between the payments. Section 7206, 2 Comp. Laws, provides that, after the third payment has been made, a policy shall not be forfeited for nonpayment of premium, and provides a method of ascertaining its net value. As every policy holder must at some time die, if any promise based on a past consideration to pay a sum of money on an event sure to happen constitutes a debt, it is very clear that, upon the great bulk of the policies issued to the holders thereof by this company, there is an indebtedness which is sure to mature. The legislature has recognized this condition of affairs, and requires the officers of each life-insurance company annually to make a detailed statement of its affairs. Section 7200, 2 Comp. Laws. Section 7207 requires a valuation of all the outstanding policies to be made, and prohibits any company from doing business in the State unless its assets shall equal the net value of its outstanding obligations, and provides in detail how this shall be determined. It clearly recognizes that, to arrive at the net assets of the company, it is necessary to deduct from its gross assets its liabilities; and it is equally clear that the property owned by an insurance company cannot be said to be more than the difference between these two sums.

But, whatever may be said as to whether this exemption should be made under the terms of the general tax law, the legislature has not left the method of assessing the personal property of life-insurance companies in doubt.

Section 3834, 1 Comp Laws provides just how it shall be done. That statute was onstrued in a former case between the parties to this record which case is reported in 129 Mich. 104 (88 N W 405). The case was so recently decided it is not necessary to do more than refer to it. It is said, however, by counsel for respondents, that but one question was presented in that case, to wit, the constitutionality of that part of section 3834, 1 Comp. Laws, which authorized the insurance commissioner to determine the amount of the personal property for which the company should be assessed. It is true the unconstitutionality of the law was the principal question as presented by counsel; but the answer interposed averred, among other things, "that the liabilities of life-insurance companies are contingent liabilities, and are conditioned upon the continuation of the payment of premiums by said policy holders to said companies." In the brief of counsel it was urged as a reason why the law was invalid: "Because the statute fixes an arbitrary rule for the determination of the liabilities of insurance companies, which ignores the fact that insurance contracts are of various classes, to wit, straight life, term, paid-up, annuity, etc.; that certain contracts are forfeitable; that others are nonforfeitable; that others have a fixed surrender value; that all are contingent, and not absolute, liabilities." After the decision was rendered, an application was made for a rehearing, which was denied. In the brief of counsel it was again urged: "Our contention is that the obligations arising under insurance policies are contingent liabilities; * * * that the aim of the statute is to offset against credits the unqualified obligations owing by the person taxed, which decrease his taxable property in fact." So we had before us, involved in the question as then presented, the same claim which is made by counsel now. If the law is constitutional, as we held in that case, it is decisive of this case.

It is said that this case was overruled in *Detroit Fire & Marine Ins. Co.* v. *Hartz*, 132 Mich. 518 (94 N. W. 7).

The court did not understand it was overruling it, but, on the contrary, cited it with approval. In that case the relator sought to go behind the determination of the commissioner, and asked to have deducted from the net assets, as determined and reported by the commissioner, an item of bonds, which presumably represented a portion of the investment to meet liabilities which were determined to be such by the commissioner. The statute was sustained, following the case of *Michigan Mut. Life-Ins. Co.* v. *Hartz*, 129 Mich. 104 (88 N. W. 405). It was also said that the writ could not issue in any event, because, if that law could not be sustained, and therefore the federal bonds included in the assets should have been deducted by the assessor, he would also be obliged to deduct from the liabilities the reserve fund (*i. e.*, unearned premiums), which could not be called a *bona fide* indebtedness under the general law, which would then apply. This does not militate against the relator's contention in this case.

The order of the circuit court is affirmed.

The other Justices concurred.