CITY OF YALE *v.* MICHIGAN FARMERS' MUTUAL FIRE INSURANCE CO. OF ST. CLAIR AND SANILAC COUNTIES.

1. TAXATION — ASSESSMENT ROLL — VALIDITY — REGULARITY—BOARD OF REVIEW—MUNICIPAL CORPORATIONS.

Under the provisions of 1 Comp. Laws, §§ 3854 and 3323 (1 How. Stat. [2d Ed.] § 1799, 2 How. Stat. [2d Ed.] § 5853), that the omission of the indorsement of the clerk of the board of review upon the assessment roll should not affect the validity of the assessment, an assessment of a mutual fire insurance company, by the board of review, for a personal city tax, was not void because the clerk of the board failed to enter the required indorsement.

2. SAME—EXEMPTED PROPERTY—CORPORATIONS.

An assessment by a municipal board of review of a personal property tax against a mutual fire insurance corporation in part based upon advance premiums due from its members, which were its principal source of revenue, is valid. The fact that the defendant claimed to be indebted to its members for $23,104.47 unearned premiums would not entitle it to an exemption of that amount. The most that could be said is that the corporation held

the fund in trust or as agent for its members. Funds so held are not exempt. 1 Comp. Laws, § 3837 (1 How. Stat. [2d Ed.] § 1782).

3. SAME—AGENTS—ASSESSMENTS.
  The fact that the fund was not assessed to the defendant as agent or trustee would be unimportant and a mere irregularity.

4. SAME—DEBTS.
  Nor would the remote contingency that any large percentage of the members might seek to cancel their policies and ask for a return of the unearned premium make unearned premiums a liability or *bona fide* indebtedness within the meaning of the statute. The probability of future loss and payment therefor by defendant would not affect the amount of its taxable assets.

Error to St. Clair; Law, J. Submitted January 19, 1914. (Docket No. 64.) Decided March 26, 1914.

Assumpsit by the city of Yale against the Michigan Farmers' Mutual Fire Insurance Company of St. Clair and Sanilac counties for personal taxes. Judgment for plaintiff, and defendant brings error. Affirmed.

*Lincoln Avery* and *Walsh & Walsh,* for appellant.
*Thomas Wellman,* for appellee.

STONE, J. This is an action of assumpsit brought by the plaintiff, a municipal corporation, against the defendant, having its principal office for the transaction of business located in the city of Yale, to recover a personal city tax amounting to $210 assessed by the plaintiff against the defendant in May, 1912. The case, being at issue, was tried before the court without a jury. The defendant requested the court to make findings of fact and law. The findings of the court are as follows:

FINDINGS OF FACT.
*"First.* Plaintiff is a municipal corporation organ-

ized under Act No. 616 of the Local Acts of 1905. Section 3 of said local act provides that 'the city of Yale shall in all things not herein otherwise provided, be governed and its powers and duties defined and limited by Act No. 215 of the Public Acts of Michigan of 1895—which said act, as the same is now or hereafter may be amended, is hereby made and constituted a part of the charter of the city of Yale.'

"Defendant is a mutual fire insurance company organized under chapter 195 of the Compiled Laws of 1897.

"*Second.* This assessment was not made by the assessing officer of the plaintiff city, but was placed on the assessment roll by the board of review of the plaintiff city on the 27th day of May, 1912, at a regular meeting of said board. The assessing officer of the plaintiff city was Norman B. Herbert, who was also a member of the board of review, under section 5 of Act No. 215 of the Public Acts of 1895. Mr. Herbert was, and is, also the secretary of the defendant insurance company. At the time the assessment roll was offered and received in evidence, showing this assessment, the following occurred:

"*By Plaintiff's Attorney:* I offer the assessment roll of the city of Yale for the year 1912. On page 26, the last item shows the assessment to the Michigan Farmers' Mutual Fire Insurance Company, personal property assessed at $14,000, fixed by the board of review at $14,000; total same; contingent tax $140; highway tax $35; sinking fund tax $35; total city tax $210. This suit is brought just for the city tax alone. I understand the assessment and proceedings are conceded to be regular.

"*Defendant's Attorney:* We raise no question about the regularity of the proceedings, but we do contest the right of the assessing officers to assess this company in the manner in which they did assess it; also we contest their right to make any assessment whatever.

"*The Court:* The plea is a plea of the general issue?

"*Defendant's Attorney:* Yes; with notice. We raise no question about the regularity of the roll, aside from what the objections indicate.

"The assessment roll was then received in evidence,

and no motion was made at that time, nor has been made since, to strike it out.   However, later in the day the following occurred:

"*Defendant's Attorney:*   With reference to our concession about the assessment and proceedings at the time of the presentation of this roll, we do not want to have counsel understand that we admit the regularity of the proceedings necessary to commence this suit.   The proceedings prior to this roll is what we refer to as admitting the regularity of.   But object to this roll for the reason that it is not signed by the clerk of the board of review, and the proof shows that this assessment was fixed by the board of review; whereas, this roll attempts to state that the value as assessed by the supervisors, I take it to mean, was $14,000.   The proof shows there was no assessment at all made by the supervisors, which is the fact, is it not, Mr. Weymouth?

"*Mr. Weymouth,* Plaintiff's Attorney:   There was no assessment made by the supervisors.

"*Defendant's Attorney:*   Now, there being no assessment by the supervisors, and there being no certificate by the board of review, we shall raise the point that there is no assessment here.

"The assessment roll in question appears to have a certificate attached in accordance with the provisions of section 6 of Act No. 215 of the Public Acts of 1895; but such certificate or statement was not signed by the clerk of the board of review.

"However, it appears in the testimony and by the assessment roll that on the 27th day of May, 1912, the following entry was made on page 26 of the assessment roll of the plaintiff city:  'Michigan Farmers' Mutual Fire Insurance Company, personal value as assessed $14,000, value as fixed by board of review $14,000.'

"The testimony shows that the board of review placed this assessment on the assessment roll as an assessment against the defendant company.

"*Third.*   On or about the 1st of January, 1912, the defendant made its report to the commissioner of insurance for the State of Michigan.   This report showed the following material facts:

179 MICH.—17.

Resources.

| | | |
|---|---:|---:|
| Iron safe | $ 100 | 00 |
| Mortgages | 19,000 | 00 |
| Premiums in course of collection | 4,150 | 30 |
| Cash on hand December 31, 1911 | 5,548 | 41 |
| Total | $28,798 | 71 |

"This report further shows that the defendant owned no real estate, and owed no debts.

"It was admitted upon the trial that the assessment of $14,000 was arrived at by reducing the above-named resources by one-half, and assessing the company at $14,000. The reason for doing this, as stated by the city attorney, who is a member of the board of review, was that it was the custom of the assessing officer of the city of Yale to assess property about 50 per cent. of its actual value, and that for this reason this company was assessed for about half of the total amount of its property, as shown by the report heretofore referred to.

"*Fourth.* At the time of making of the annual report for the year 1911 by the defendant an item of $19,000 mortgages appears as a part of the assets of the defendant company. Between that time and the time of making the assessment in question, Mr. Herbert, the defendant's secretary, had paid a specific tax under the mortgage tax law on $9,700 of the defendant's mortgages. This $9,700 on which the mortgage tax had thus been paid consisted of $2,000 of the $19,000 of mortgages contained in the report heretofore referred to, together with moneys belonging to the company which had been invested in mortgages since January 1, 1912, to the amount of $7,700. Thus the defendant had invested in mortgages on May 27, 1912, at the time the contested assessment was made by the board of review, upon which no specific mortgage tax had been paid, the sum of $17,000.

"*Fifth.* Defendant's fifth request for findings of fact is covered so far as the evidence warrants, and so far as is material and necessary by the former findings filed May 31, 1913."

That request is as follows:

("*Fifth.* The method of doing business by this

company is that an applicant for membership is required to pay an advance assessment. The board of directors made an estimate of what amount of money would be required to meet the demands of the company, and fixed, by resolution, the advanced assessment for three years. If this, together with the moneys on hand, is sufficient to pay the losses of the company, then the members need pay no further assessments; but if this is not sufficient, then they are liable to such further assessments as may be necessary to pay the obligations of the company. The board of directors fixed two separate rates of advanced assessments; the more hazardous risks paying the larger amount. It appears that at the time of the making of this assessment the company had received from members who held policies of insurance that were then in force the sum of $23,104.47, which at that time had not been earned. This is termed 'Return Assessments' or 'Return Premiums.' If for any reason it become necessary to refund to the membership their *pro rata* of the advanced assessments paid by them, the company would have had to refund this amount of money.")

"*Sixth.* The defendant company had no source of revenue, other than the assessment of the members. The average losses of the company each year, taking one year with another, was approximately $8,000, and the cost of operating the company was approximately $1,200. The defendant company had accumulated, under its plan of collecting advance premiums, the money in bank and the moneys represented by the mortgages. This fund was kept on hand for the payment of losses and expenses of the company, and for return premiums to members, when called upon to make them. There was no personal gain for any one in the management of the company, except that the officers were paid a compensation for the work they did.

"*Seventh.* Defendant's seventh request for finding of fact is refused."

It was as follows:

("*Seventh.* If, at the time this assessment was made, the unearned advance assessments above mentioned, amounting to $23,104.47, were deducted from

the total resources of the company, the company would have no assets liable to taxation.")

"*Eighth.* The item appearing in the report of the company heretofore given, showing the resources of the company, under the head of 'Premiums in Course of Collection,' represents premiums not paid in; that is, there was that amount of premiums which had not been collected. Under the practice of this company some of the premiums were paid in cash and some in notes.

"*Ninth.* Suitable demand was made by the treasurer of the plaintiff city, and an endeavor to collect the tax was made; but the tax was not paid, and was duly returned. The council of the city of Yale duly authorized the commencement of this suit."

### FINDINGS OF LAW.

"*First.* The omission of the clerk of the board of review to sign the certificate or statement added to the assessment roll, as provided by section 6 of Act 215 of the Public Acts of 1895, does not invalidate such assessment roll, for the reason that said statute, among other things, provides: 'The omission of such indorsement, however, shall not affect the validity of such roll.' The indorsement referred to in the part of the statute just quoted is the statement or indorsement which was attached to this roll, but not signed by the clerk of the board of review. Hence it follows that the assessment of defendant company placed on the roll by the board of review on May 27, 1912, is a valid assessment.

"*Second.* Defendant's second request for finding of law is fully governed by the findings filed on May 31, 1913.

"*Third.* Defendant's third request for findings of law is fully covered by findings filed by this court on May 31, 1913."

These requests were as follows:

("*Second.* The defendant company owes to its members, on account of assessments which have been paid in advance, the sum of $23,104.47. This amount should be deducted from the assets of the company. After doing this, there is nothing left upon which to base an assessment against the defendant company,

and therefore I find and direct that a judgment be entered in favor of the defendant.")

(*"Third.* The law does not provide for the assessment of assets of the mutual fire insurance companies, and therefore this company is not liable to assessment. Therefore it is ordered that a judgment should be entered in favor of the defendant.")

*"Fourth.* Defendant's fourth request for findings of law is hereby refused, for the reason that the report of the commissioner of insurance therein referred to furnished sufficient basis for its assessment."

That request was as follows:

(*"Fourth.* The commissioner of insurance did not determine and show by his last report the net assets, above liabilities, in accordance with the statute governing insurance companies, if such statute governs mutual fire insurance companies, and therefore there was no basis for making this assessment, and it is ordered that judgment be entered in favor of the defendant.")

"Hence it follows that plaintiff is entitled to a judgment of $210, and interest on the same at 5 per cent. per annum, computed from the latest date on which defendant was entitled to pay this tax without interest, to the treasurer of the city of Yale, together with its cost."

Judgment was thereupon entered for the plaintiff for the amount claimed.

It appears that an informal finding had been filed by the court on May 31, 1913. The finding, however, which we have copied was the final finding upon request of defendant's counsel, and made before judgment entered. As already appears, defendant's counsel had filed a proposed finding, some parts of which have been copied by us and embraced in parentheses. Exceptions were duly filed by the defendant to the refusal of the court to find as requested, both upon the law and the facts, and also to the findings and conclusions of law made by the court, all of which have been covered by proper assignments of error.

An examination of the record satisfies us that the findings of fact by the court and the conclusions of law were fully supported and sustained by the evidence.

As we understand the position of defendant and appellant, it is:

(1) That there was no valid assessment against the defendant company.

(2) That defendant was indebted to its members for $23,104.47, as unearned premiums, which left nothing to assess.

(3) That advance premiums of mutual fire insurance companies are not subject to assessment.

(4) That the insurance commissioner did not determine, as shown by his report issued in 1912, the net assets, above liabilities, of defendant company, and therefore there was no basis for this assessment.

1. The point urged that there was no valid assessment against the company may be said to cover more than the mere question of the regularity of the assessment. Upon the subject of the regularity of the assessment, it is only necessary to refer to section 6, chap. 31, Act No. 215 of the Public Acts of 1895 (2 How. Stat. [2d Ed.] § 5853), which provides that "the omission of such indorsement, however, shall not affect the validity of any such roll." The same provision is found in the general tax law (1 Comp. Laws, § 3854, 1 How. Stat. [2d Ed.] § 1799), which reads as follows:

"Upon the completion of said roll and its indorsement in manner aforesaid, the same shall be conclusively presumed by all courts and tribunals to be valid, and shall not be set aside except for causes hereinafter mentioned. The omission of such indorsement shall not affect the validity of such roll."

The argument is made that, if the assessment had been made by the assessing officers, it would have had their signatures, or certificate, to show that it had

been made; then the absence of the signature of the board of review would not invalidate the roll.

Counsel have evidently overlooked the fact that supervisors' or assessors' certificates to assessment rolls have not been required since the revision of the tax law of 1882. This provision was omitted from the tax law of that year, and has never been re-enacted. See note to section 3850, 1 Comp. Laws (1 How. Stat. [2d Ed.] § 1795). We are of opinion that there is no force in this objection.

2. The other objections may be considered together, and they present the meritorious question in the case.

By section 3824, 1 Comp. Laws (1 How. Stat. [2d Ed.] § 1769), it is provided "that all property, real and personal, within the jurisdiction of this State, not expressly exempted, shall be subject to taxation."

Attention is called to section 3831, 1 Comp. Laws (1 How. Stat. [2d Ed.] § 1776), defining the personal property that is subject to taxation.

Section 3834, 1 Comp. Laws, as amended (Pub. Acts 1903, Act No. 235; 1 How. Stat. [2d Ed.] § 1779), provides as follows:

"All corporate property, except where some other provision is made by law, shall be assessed to the corporation as to a natural person, in the name of the corporation. The place where its office is located in its articles of incorporation shall be deemed its residence. * * * In computing the taxable property of insurance companies organized under the laws of this State, the value of the real property on which a company pays taxes shall be deducted from its net assets above liabilities, as determined and shown by the last report of the commissioner of insurance, including in such liabilities the legal reserve required by the laws of this State, or the regulations of the insurance department, and the remainder shall be the personal property for which the company shall be assessed."

That the defendant has no real property is found

as a fact in this case. The statute under which the defendant is organized does not contemplate or provide for any "legal reserve." Such "reserve" is not within the purview of the statute. The term is a misnomer when applied to such companies. The report of the insurance commissioner upon which the assessment complained of is based shows total available resources of $28,798.71, and no liabilities. This is identical with the report filed by the defendant. This would seem to be a sufficient determination by the commissioner of insurance, as shown by the report in evidence, if any such determination was required. It thus appears that the assessment complained of is lower in amount than that determined as assessable by the insurance commissioner, and appearing in the report of the defendant.

It is not necessary for us to here decide whether or not the defendant is authorized to collect, in advance, assessments from its members. It is not denied that it has done so.

As we understand the claim of the defendant, it is that this fund really belongs to its members who hold policies, and has been contributed by those members in advance of assessments. Can it be said that these moneys now held by the defendant shall be exempt from taxation, because they are held by the defendant as trustee or agent of those members as a fund accumulated which evidently is intended to pay such assessments as may be found necessary from time to time? The most that can be said is that the defendant holds this fund as a trustee or agent for its members. We are not aware of any statute which would exempt such fund from taxation.

By subdivision 6 of section 3837, 3 Comp. Laws (1 How. Stat. [2d Ed.] § 1782), it is provided as follows:

"Personal property under the control of a trustee or agent, whether a corporation or a natural person,

may be assessed to such trustee or agent in the township where he resides, except as otherwise provided."

The mere fact that it is not assessed to the corporation as a trustee or agent would be a mere irregularity, and is unimportant under our statute, and the rulings of this court. Section 3922, 1 Comp. Laws (1 How. Stat. [2d Ed.] § 1870); *Iron Star Co.* v. *Wehse,* 117 Mich. 487 (76 N. W. 66).

In the first finding of the circuit judge, in the form of an opinion, we find the following language, which we approve:

'Does the possibility that part or all of the members of this mutual insurance company will seek a cancellation of their policies, and demand a return of the unearned premium which they have paid, or for which they have given their promissory notes, render such unearned premium a liability or a *bona fide* debt which defendant is entitled to have subtracted from its resources in an estimation of its taxable property?

"Defendant's statement shows that on December 31, 1911, it had 2,760 members. So far as the evidence in this case shows, defendant is a well-managed and prosperous mutual insurance company doing a good business within a limited territory, at a very moderate premium, and with a very low expense account. It was authorized to do business in 1895, as shown by its charter. The possibility that all or any large percentage of its members will seek to surrender their policies and ask for a return of unearned premium is such a remote and improbable contingency as to be hardly worthy of consideration. This contingency did not deprive the moneys, promissory notes, or mortgages representing the unearned premium of $23,104.47 of their character as personal property, nor did it make this unearned premium a 'liability' or a *'bona fide* indebtedness' within the meaning of any statute relating to the assessment of personal property. Neither does the probability of future losses of insured property, for which defendant will have to pay under its contracts, change the character of this unearned premium fund from an asset to a liability, or debt, with reference to the law

of taxation. To hold that either contingency deprived defendant of all taxable assets would not be in accord with sound reason, and would be against all precedents I can find. *Home Fire Ins. Co.* v. *Lynch*, 19 Utah, 189 (56 Pac. 681); *People* v. *Davenport*, 91 N. Y. 574; *Insurance Co.* v. *Cappellar*, 38 Ohio St. 560; *State* v. *Board of Assessors*, 47 La. Ann. 1498 (18 South. 462)."

We also call attention to the language of Chief Justice HOOKER in *Detroit Fire & Marine Ins. Co.* v. *Hartz*, 132 Mich. 518 (94 N. W. 7), which seems to be very much in point upon this question of remote contingent liability.

Counsel for defendant have called attention to the case of *Michigan Mutual Life Ins. Co.* v. *Detroit Common Council*, 133 Mich. 408 (95 N. W. 1131). That case had to do with the reserve fund of a life insurance company, and presented a different question from the one we are here considering, and in no way conflicts with the authorities above cited.

The judgment of the circuit court is affirmed.

MCALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.