## THE "RESERVES" OF OHIO LIFE INSURANCE COMPANIES ARE NOT TAXABLE.

Hamilton County Court of Common Pleas.

THE UNION CENTRAL LIFE INSURANCE COMPANY, ET AL. *v.* WILLIAM F. HESS, AUDITOR.

Decided, June 16, 1925.

*Taxation—"Reserves" of Life Insurance Companies not Credits but Debts—Belong to the Policyholders and not to the Company—And are not Subject to Taxation.*

1. The "reserve" of an Ohio life insurance company comprises the total liability existing because of obligations assumed under outstanding policies, to meet which the company is required to have at all times an equivalent amount on hand in the form of approved securities. In practice, however, the liability arising from the death of a policyholder or the maturity of a policy is usually paid out of the current assets of the company and the liabilities decreased a corresponding amount.

2. This great obligation of the company, known as the "reserve," is an asset of the policy holders and not of the company, and in view of its recognition by the statutory law of the state as a debt, a company clearly has the right to deduct said "reserve" from its credits in making its return for taxation.

3. Under recent rulings of the Supreme Court, Sections 5327 and 9357 can not be regarded as open to attack on constitutional grounds, and with the intention of the Legislature to treat the "reserve" as a debt to be held sacred for the policy holders, and public policy pointing strongly to the wisdom of the practice of the Ohio companies of treating their "reserves" as debts, the court can reach no other conclusion than that to tax these reserves as credits would be contrary to all authority, violative alike of the statutes and the fundamental principles of life insurance, and a shock to a most beneficient *quasi* public institution which would be so far reaching in its effects as to be without justification, and the injunction against placing these reserves on the tax duplicate is made permanent.

*Maxwell & Ramsey, Dinsmore, Shohl & Sawyer,* and *Robert Ramsey,* Attorneys for the Union Central Life Insurance Co.

*Waite, Schindel & Bayless,* Attorneys for the Columbia Life Insurance Co.

*Clyde P. Johnson,* and *Williams, Ragland, Dixon & Murphy,* Attorneys for the Western & Southern Life Insurance Co.

*Bettinger, Schmitt & Kreis,* Attorneys for the Ohio National Life Insurance Co.

*Jones, Shook, Morrissey & Terry,* Attorneys for the Federal Union Life Insurance Company.

*Charles S. Bell, and Chester Durr,* Attorneys for Defendant.

CALDWELL, J.

Five separate cases have been submitted to the court, but inasmuch as the issues in each case are identical and they are all submitted on substantially the same evidence, this opinion is to apply to all.

Plaintiffs are corporations organized and doing business under the laws of this state as life insurance companies—legal reserve life insurance companies, as they are more accurately designated. One of the companies was organized in 1867, another in 1888, and the others at different times subsequent thereto.

All of the plaintiffs filed in due course in 1923 their tax returns to the auditor of Hamilton county, listing on forms provided by the Tax Commission of this state their respective personal properties required by law to be listed for taxation. No contention is made in these causes that the companies have or are withholding from their returns any taxable assets, the sole objection to the returns so made being as to the right of the companies to deduct from their "credits," or "legal claims and demands," what is known as the "reserve" or "legal reserve" required by the statutes of this state to be set up by life insurance companies organized under the laws of this state. The companies claim the right to do this on the theory that the so-called reserve is a debt and as such lawfully deductible from credits for purposes of taxation, the auditor denying that the reserve is a debt to be deducted from credits, and further asserting that even if a debt, the statute, to-wit: Section 5327 General Code, permitting the deduction of debts from credits by any person or corporation, is unconstitutional, the auditor further claiming that Section 9354 General Code, which expressly authorizes Ohio legal reserve life insurance

companies to treat their reserves for taxation as debts, is also unconstitutional. The defendant auditor, in furtherance of his views, threatened and notified the companies of his intention to place on the duplicate, for taxation against the companies, the respective amounts of their legal reserves. The companies instituted these actions to enjoin him from so doing. A temporary restraining order being granted, the plaintiff companies now ask that the same be made perpetual.

The companies have each offered in evidence their respective tax returns, duly filed as above mentioned, the official certificate of "Authorization and Valuation" of the State of Ohio Insurance Department, showing the "net valuations" of their respective company's life insurance obligations, known and designated as reserve. The defendant auditor offered no evidence excepting the testimony of an actuary, Mr. Wolf, whose testimony consisted of certain general observations as to life insurance reserves, but which testimony the court is of the opinion has little, if any, bearing on the issues for its determination.

From the above statement it can be seen that the questions before the court are as follows:

1.    Is the reserve of an Ohio Life Insurance Company a debt?

2.    Have the statutes of this state declared it to be a debt for taxation purposes or otherwise?

3.    Have the companies the right to deduct debts from credits?

4.    If the statutes have so declared, are such statutes constitutional?

Included in the third point is the constitutionality of the General Property Taxation Statute 5327, authorizing anyone to make this deduction.

Taking up these questions in the order mentioned—

1.    Is the reserve of an Ohio Life Insurance Company a debt?

In view of the conclusions reached by the court on the other points, any discussion of this, but as preliminary to the court's opinion on the other points, and as demonstrating the reasonableness and propriety of the legislative conclusions reached as to the reserve, might well be passed over, but a brief statement of the nature of this reserve and its necessity in the

proper and prudent conduct of the business of life insurance companies and in the protection of their policyholders might seem pertinent.

As stated by counsel in oral argument, its designation as "reserve" is somewhat misleading. The ordinary acceptation of the word "reserve," as the court understands it, is that of a fund separate and distinct, usually consisting of securities, or even money, set aside for a certain exclusive purpose, to be drawn upon the happening of the event or contingency in the creation of the reserve, such as, for illustration, reserves of national banks. The reserves of life insurance companies, however, are totally dissimilar and not only are not separate and distinct funds set aside, consisting of money or securities, but are a measurement or ascertainment of liability or obligation and *made by the state pursuant to statutory mandate,* to meet which the companies must at all times have certain approved securities. Nor can it be said that these approved securities constitute this so-called reserve, as all investments of a life insurance company in the state must be in securities approved by the state, and all its investments and resources are a fund upon which to draw to meet its policy obligations. Hence it could with just as much force be claimed that all its resources, real estate and personal property is a reserve fund, as to state that any particular sum, less in amount than its entire assets, and representing only the exact amount of its policy obligations as figured by the state, is to be called a reserve fund. The court is of the opinion, therefore, that the reserve is in no sense a fund or asset, but is exactly, as defined by statute, the amount of its policy obligations—the amount owing to its policy holders—estimated in a certain fixed way, on a certain basis, by the state, as provided by statute, against which and to meet which a company must at all times have a certain amount of resources or assets, the taxability or non-taxability of which being beside the question, as they may be invested in non-taxables, such as Liberty bonds, or taxables, such as mortgage notes.

When a policy matures, either throught death of the insured or by expiration of time, the company does not necessarily,

as the· court understands, go to any fund called a reserve and extract· money from it with which to meet that obligation, thereby depleting that reserve by the amount of the policy obligation.  On the contrary, the money is produced from the general assets of the company and there is a corresponding reduction of the general liability of the company on its policies, which is known and designated throughout the insurance world as the reserve.

While the court is entirely satisfied with this reasoning, which forces the conclusion that the reserve of a life insurance company is simply another way of designating the amount of its policy obligations, we are not without authority to support it. :There seem to be three leading cases on this point, all reaching the same conclusion and they are directly in point, These cases are: *Alabama* v. *Lot,* 54 Ala., 499; *Equitable* v. *Board,* 74 Iowa, 178; *Michigan* v. *Council,* 133 Mich., 408.

Let me quote the following from the Alabama case:

"A life insurance company, therefore, when its solvent credits are assessed for taxation under a statute which declares that from them the indebtedness of the taxpayer shall be deducted, and the excess only shall be taxed, ought to be allowed to have deducted therefrom its premium reserve.  Unless this be done, an invidious discrimination will be made against institutions, which it cannot be supposed the Legislature intended to tax out of existence."

The court will not quote further from any of thes eauthorities.  ·They are well considered and with their conclusions and reasonings the court is agreed.  Not a single authority has been presented to the court wherein, under taxation statutes similar to ours, has a different view or conclusion been reached.

Since the Alabama case was decided in 1875, the court has been unable to find that any decision of a court or any act of the Legislature has held that the reserve of a life insurance company is not a debt.

Counsel for auditor has endeavored to draw some analogy between the reserves of fire insurance companies and those of life insurance companies, and has argued that inasmuch as the Supreme Court of this state in the *Cappelar case,* 35 O. S.,

560, has held fire insurance company reserves are not liabilities to be deducted from credits, which case has recently been followed and affirmed in the Ohio Casualty case, that the court should follow the reasoning in those cases in reaching his conclusion in this.

The analogy between a fire insurance company and life insurance company, insofar as the reserves are concerned ceases immediately upon its very suggestion. Life insurance companies issue a fixed, rigid contract, which cannot be altered or amended or determined by an act of the insurance company bound by the terms of that contract. Its liability is fixed immediately on the inception of the contract and it cannot escape therefrom notwithstanding any change in conditions which might make the hazard greater, the contract unprofitable, or inadvisable from a life insurance company standpoint. A fire insurance company contract is entirely different, is determinable by either party almost upon notice. A fire insurance company can get off the risk when it looks to be dangerous at any time it desires. In addition to this, a contingency which would give rise to an obligation on the part of the fire insurance company is uncertain, its imminence may be averted by cancellation, while in a life insurance contract it is positive and fixed. I may insure my house and it may never burn, but if I insure my life, I am bound at some time to die. The annotator, in 13 A. L. R., page 203, after reviewing the leading cases in which the reserves of both fire and life insurance companies were considered, reaches the following conclusion:

"One is constrained to think the weight of authority and better reasons are on the side of the decisions which have held that life insurance companies when assessed for taxation upon their assets under statutes allowing the deduction of debts, are entitled to have deducted as an indebtedness to policyholders their reserve funds set apart and maintained to meet the obligations assumed and unpaid for the security of the policies."

The court, therefore, is of the opinion that the Cappelar and Ohio Casualty Company cases throw no light on the present

controversy. The court is also reliably informed that it was admitted by the Attorney General and counsel on both sides in the Ohio Casualty case in the briefs and arguments that under the laws of this state life insurance company reserves were debts, properly deductible from credits for taxation purposes, and an examination of the opinion in the Supreme Court of the Ohio Casualty Company case discloses that the court was careful to keep clear in mind this distinction.

While some additional light on the question might be thrown by showing how the reserve is created through the excess premiums paid by the policyholder during the early years of the policy life, when the current cost of carrying the insurance is less than the premiums received, the policyholder thus creating his own reserve to be drawn upon as the value of the obligation becomes greater as it approaches its maturity, the court feels that the simple analysis heretofore made of what the reserve is, so clearly, at least in the mind of the court, establishes its character, that further elaboration as to how it is created or built seems unnecessary. It might be referred to in passing, that the law, in compelling the companies to give cash and loan values to policies issued by them, extended and paid-up insurance after lapse, stamps the nature of this reserve as a liability quite emphatically.

2. Have the statutes of this state declared the reserve to be a debt for taxation purposes or otherwise?

While it is always most refreshing to the court to reach a conclusion as the direct result of a process of reasoning irrespective of supporting authorities, it is a matter of great additional satisfaction when the court finds these conclusions to be consonant and in exact accord with the statutory law of his state, and this is the somewhat pleasant situation in which the court now finds itself. No *unprejudiced* mind can read the statutes of this state governing, restricting and controlling the conduct and operation of life insurance companies without coming to but one conclusion as to the intentions of the Legislature toward this so-called reserve, and how it is to be treated by life insurance companies, both for taxation purposes and otherwise. The mere reading of these suffices to show that to

reach any conclusion other than that the Legislature deliberately intended the reserve to be considered and treated as a debt or liability, would be to close our eyes to the plain meaning of English language.

Section 636 of the General Code charges the Superintendent of Insurance with the duty each year of making "net valuations of all outstanding policies" and other "obligations, etc." "Net valuation" must mean a valuation or an appraisement of an asset or resource. Certainly the policy cannot be considered an asset of the company, but must be an *asset of the policyholder,* and consequently a *debt,* or *"obligation"* of the *issuing company.* The "net valuation" of the company's policies must therefore be an ascertainment of the obligation or debt of the company on these policies, and when this language is read in conjunction with Section 9357, to which the court will refer later, it is quite clear that the "net valuation" of the policy obligations of the company is equivalent to or another manner of expressing or ascertaining the reserve or liability of the company. Bearing in mind the language of Section 636 in its use of the words "net valuation" and that this is a valuation of assets in the policyholders' hands, and consequently a debt of the company, note the lanquage of Section 9357:

"The reserve being the amount of debts of life insurance companies by reason of their outstanding policies in gross."

The "amount of debts" in Section 9357 must be the "net valuations" of Section 636. No other inference or construction is possible.

Section 628 requires the company at all times to have assets equal to this net valuation of its outstanding policies, or as the statute terms it, "re-insurance reserve," or be considered insolvent. Section 637 again refers to the "valuation" of the company's policies and its other "obligations," thus placing the valuation so made in the same category with other obligations, which is but another manner of expressing the meaning of reserve. Section 646, in providing for the delivery to the companies by the Superintendent of Insurance of his

certificate that the companies have complied with the law again refers to the valuation of the policy obligations as a liability. Section 9362 prohibits the companies from paying dividends except after setting aside of an amount "equal to the reserve of all of its outstanding policies," thus making the reserve a charge or debt against its assets. All companies doing business in this state must each year file statements with the Superintendent of Insurance, on a form in national use and approved by the Department, showing, according to Section 9363, in the liability column, "the amount of reserve on all policies." In addition to these, Section 9420 makes provision for the cash and loan values which every policy must contain, which provision must only be on the assumption that the reserve on these policies, which is the exact amount of the cash or loan value, *belongs to the policyholder,* and *hence a liability to the company.*

All these statutes disclose but a single purpose in the minds of the Legislature, namely, that the reserve is a sacred *obligation* of the company and must be preserved and protected for the benefit of the policyholder. If, however, there was any doubt in the court's mind as to this it must be removed when contemplating Section 9357, which gives positive legislative definition to the term "reserve", clearly designating and defining it as a debt and then expressly authorizing the companies to so treat it in their returns of taxation. The language of this Section 9357 is plain, clear and unambiguous, first giving a statutory definition of the reserve as follows:

"The reserve being the amount of the debts of life insurance companies by reason of their outstanding policies in gross." and, secondly, specifically stating that the reserve *as so defined* "may be so treated in the returns for taxation." Were the court now to argue otherwise or reach an opposite conclusion, he would be trespassing on the exclusive province of the Legislature, as a coordinate branch of the Government, and entering fields set apart by the Constitution for the sole exercise of legislative perogative.

3. Is there any question as to the constitutionality of the statutes involved?

Will a full realization of the force of the statutes referred to in this opinion as exhibiting an unmistakable intent on the part of the Legislature to declare the reserve a debt and to be held sacred for the policyholders, the only retreat left to the defendant is to attack the constitutionality of Sections 5327 and 9357. The very recent decision of the Supreme Court in the *Malleable Iron Castings case*, 111 Ohio State, 117, where the Court again carefully and thoroughly considered the constitutionality of Section 5327, again reasserts its validity as binding on this court. Nor can the court, even though it were so inclined, see, nor has any argument been advanced to it to justify it in holding that the passage of Section 9357 is an unwarranted exercise of legislative power.

The court in conclusion therefore feels that not only from the standpoint of the laws applicable to this controversy, but from every consideration of public policy, the injunction allowed in these cases should be made permanent. To reach any other conclusion would be contrary to all authority, violative not only of the statutes of this state, but of the most fundamental principles of life insurance, and a shock to a most beneficient quasi public institution, which would be too far-reaching in its effect to be justified without the clearest reasons.

Therefore, the court is convinced that the policy of the companies is lawful in treating their reserves as debts for purposes of taxation—a policy pursued by one of the companies without objection for more than half a century—and in accordance with which enormous sums of money have been collected as premiums from policyholders, invested for their protection, and policy contracts issued accordingly. Nothing that has been said in argument or that the court can find in the law suggests any other conclusion.

A decree may therefore be taken in accordance with the prayer in the petitions.