MICHIGAN CENTRAL RAILROAD CO. *v.* BAIKIE.

DETROIT & MACKINAC RAILWAY CO. *v.* SAME.

1. DRAINS—CULVERTS—ASSESSMENT OF COST.
   Where, in constructing drain, culverts were required to cross railroad right of way, cost thereof should be charged as part of necessary construction of drain; but total cost of culverts may not legally be charged against railroad property.

2. SAME—CONSTITUTIONAL LAW—DUE PROCESS—FRAUDULENT ASSESSMENT.
   Assessment against railroad company for benefits from construction of drain from 100 to 800 times greater than the rate against adjoining farm lands is so palpably arbitrary as in effect to amount to fraud, and is in violation of due process and equal protection clauses of 14th Amendment to United States Constitution.

3. SAME—ARBITRARY ASSESSMENTS—FRAUD—COURT HAS POWER TO SET ASIDE FRAUDULENT ASSESSMENT.
   Where assessment against railroad property for benefits from construction of drain is so arbitrary and unjust as to amount to fraud, Supreme Court, although it may not sit in review of judgment of drain commissioner and board of review, is not powerless to do equity, but it has power to set assessment aside, and send proceeding back for new assessment.
   SHARPE, NORTH, and FEAD, JJ., dissenting.

Appeals from Arenac; Smith (Guy E.), J. Submitted June 12, 1929. (Docket Nos. 19, 20, Calendar Nos. 34,302, 34,339.) Decided January 10, 1930.

Separate bills by the Michigan Central Railroad Company, a corporation, and the Detroit & Mackinac

Railway Company, a corporation, against James P. Baikie and other township and county officers to restrain the levy of a drain tax. From decrees dismissing the bill of complaint in each case, plaintiffs appeal. Reversed.

*Hewitt & Brooker,* for plaintiff Michigan Central Railroad Company.

*Carl R. Henry,* for plaintiff Detroit and Mackinac Railway Company.

*William T. Yeo,* for defendants.

SHARPE, J. (*dissenting*). The proofs in these cases were submitted together in the trial court. The legal questions presented are similar, and the facts so nearly so, that they may be disposed of in one opinion.

What is known as the "Budd Drain" extends across a part of the southern part of Arenac county, dips slightly into the northern part of Bay county, and empties its waters into Saginaw Bay at the east. The proceedings relative to its establishment are not questioned. The drain law was amended and codified by Act No. 316, Pub. Acts 1923. Certain amendments have since been made, not material to the issue here presented. Our references will be made to the provisions of that act. After the final order of determination shall have been made, it is the duty of the commissioner (chap. 6, § 1) to apportion the per cent. of the cost of construction which shall be borne by any township, city, highway, or any piece or parcel of land benefited thereby. "All apportionments of benefits   *   *   *   shall be upon the principle of benefits derived" (section 2), and the several descriptions of such lands shall constitute the special

assessment district on which a tax shall be spread in the amounts so apportioned (section 3). Any owner of such lands may secure the appointment by the probate court of a board of review, the members of which, after due notice, shall review the determination of the commissioner, and, after hearing such proofs as may be submitted and viewing the lands benefited, shall make such order "as they may deem just and equitable," and "the action and decision of said board shall be final" (section 7).

Pursuant to these provisions, the drain commissioner of Arenac made an apportionment in writing of the benefits the several descriptions of land in that county would derive from the construction of the drain. Review was had on petition of the plaintiffs, and the apportionment confirmed by that board on June 11, 1928. On January 9, 1929, plaintiffs filed their bills of complaint herein, setting up the facts relating to the establishment of the drain and the apportionment of benefits, and praying that the assessment therefor be set aside on the ground that the action of the commissioner and the decision of the board of review were "illegal, unlawful, fraudulent, arbitrary and discriminatory." After answers and proofs taken in open court, decrees were entered dismissing their bills, from which appeals have been taken.

The estimated cost of the drain is $35,000. The commissioner apportioned benefits as follows: To the township of Standish, 17.90 per cent.; to the township of Lincoln, 4.49 per cent.; to the Michigan Central Railroad Company, 11 per cent.; to the Detroit & Mackinac Railway Company, 12 per cent.; to the State highway 1 per cent., and the balance to the remaining lands in the drainage district. The farming lands were divided into four zones. One-half of one per cent. of the cost was apportioned to

the 40-acre tracts bordering on the drain, one-fourth to those next back, one-eighth to those next back, and one-sixteenth to those at the rear of the drainage district. The tax on these would be $4.37, $2.18, $1.09 and 55 cents per acre, respectively. Plaintiffs' rights of way are 100 feet in width, and about 9 acres of each of their lands are within the district.

Chapter 13 of the act, as amended by Act No. 331, Pub. Acts 1927, provides that, in cases where the drain will cross the right of way, the "damages and compensation" to be awarded to the railroad company "shall include the legal damages for the making of the opening required in the drain proceedings," and after they have been determined it becomes the duty of the company to make such opening when notified to do so by the commissioner. The damages to which the plaintiffs are entitled have been fixed at the sum of $3,200 for the Michigan Central Railroad Company, and $3,500 for the Detroit & Mackinac Railway Company.

The contention of the attorneys for the plaintiffs seems to rest upon their claim that, as the assessment upon the farming lands was levied according to acreage, the same plan should have been followed as to the railroad property. Assessments must be levied according to benefits. The commissioner and board of review inspected the lands. We must assume that in their opinion the character of the farming land assessed was so nearly similar that an assessment of a fixed percentage per acre was fairly representative of the benefits to be derived from the construction of the drain, particularly as the record contains no proof to the contrary. The acreage, however, in plaintiffs' rights of way was no fair criterion on which to base their assessments. The construction of the drain necessitated new culverts in the right of way of both plaintiffs. That these cul-

verts will be of much benefit to their property cannot be doubted. It quite clearly appears that those now in use but inadequately take care of the flowage at high water. The roadbed of the Michigan Central Railroad Company is constructed of sand and cinders about three feet in height, while that of the Detroit & Mackinac Railway Company is gravel and earth about two feet high. They run parallel with the shore line of Saginaw Bay. That these roadbeds obstruct the natural drainage of the lands to the west cannot be doubted. When the water is high, the latter road is occasionally overflowed.

That the property of the plaintiffs will receive a greater percentage of benefit than the farming lands seems clearly established. The question is, How much more? New culverts must be constructed. Plaintiffs' claims for remuneration for the cost of these have been allowed, and will be paid to them. The fact that the amount apportioned to them for benefits bears some relation to the allowance therefor, while suggestive, is in no way convincing that the commissioner and board of review sought in this way to recoup the amounts to be so paid. Comparison is made with the apportionment for the State highway, which parallels the Michigan Central Railroad. This highway was constructed but a few years ago, and provision for its drainage was then made by the construction of a culvert large enough to afford passage for the waters in the drain when constructed.

Mr. Baikie, the then drain commissioner of Arenac county, had had long experience in the construction of drains. Both he and Mr. Selle, the only member of the board of review called as a witness, testified that they used their best judgment in deciding upon the percentage of cost which the plaintiffs' property should bear. They admitted that they took into con-

sideration the necessity for the construction of new culverts and the cost thereof. In view of the physical condition of the plaintiffs' properties, the necessity of adequate drainage is self-evident, and it clearly appears that it can best be secured by means of proper culverts through which the waters of this drain may flow. For this reason the cost of these culverts can be said to be somewhat indicative of the benefit which the respective railroads will derive from the construction of this drain.

Section 9 of chapter 10 provides that the court in which any proceedings are begun to enjoin any tax or assessment "may correct any gross injustice in the award of damages, or assessment of benefits, as may appear after hearing the proofs and allegations of both sides and shall make such order in the premises as shall be just and equitable." The plaintiffs here claim that a gross injustice was committed in the assessment of benefits upon their properties. Under the provision above quoted, the burden would seem to rest upon them to submit such proofs as would enable the court to correct this injustice and substitute a fair and equitable assessment for that made by the commissioner. While the engineers of both companies were sworn as witnesses, no inquiry was made of them as to the manner in which the apportionment for benefits should have been made or the percentage which should have been allotted to the respective companies, nor was any other proof submitted bearing thereon.

The integrity of the commissioner and board of review is not questioned. The right of the plaintiffs to relief rests upon the claim that the apportionments were arrived at by applying an erroneous theory of benefits, and are so out of proportion to that allotted to other lands that we should say they

are fraudulent. This we are unable to do upon the records presented.

In *Hudlemyer* v. *Dickinson,* 143 Mich. 250, 256, in which a similar question was presented, it was said:

"Although a court in chancery can grant relief in this case on the ground of fraud, it cannot sit as an appellate court to review questions of regularity or charges of error in the drain commissioner's proceedings not affecting the jurisdiction *nor substitute its judgment and discretion for that of the officers to whom it has been by law confided.*"

The decrees should be affirmed, with costs to appellees.

North and Fead, JJ., concurred with Sharpe, J.

Clark, J. The farm lands are divided without regard to improvement or value into four classes, and assessed $4.37, $2.19, $1.09, and $.55 per acre in the order named. Railroad land or right of way is assessed on a different basis. The rate against the railroads is from near 100 to nearly 800 times greater than the rate against farm lands. The Michigan Central Railroad is assessed for benefits in Arenac county on about nine acres nearly $3,850, approximately $450 per acre. The Detroit & Mackinac Railway is assessed for benefits in Arenac county on about six acres nearly $4,200, approximately $700 per acre. Adjacent to this 100-foot railroad right of way of nearly six acres against which the apportionment is 12 per cent. of the cost of the drain is a 66-foot right of way of the Consumers Power Company, against which the apportionment is but .0088 per cent., less than 1/1000th as much as that of the railroad. Why this marked difference in favor of the power property and against the railroads, and in favor of the farms and against the railroads? There seems to be no answer except the following:

A culvert was required where the drain crosses each railroad right of way. The cost thereof must be included in the estimate for the drain as a part of the necessary expense of construction. It was so included, to the Michigan Central Railroad, $3,200, to the Detroit & Mackinac Railway, $3,500. It is apparent that the approximate cost of these culverts was in fact unlawfully charged back against the respective railroads as a part of the apportionment and assessment.

Drain Commissioner Baikie testified:

"Did you consider the culvert to be put across the railroad as one of the benefits to the railroad?

"*A.* No, I did not consider the cost of the culvert as being a benefit.

"*Q.* I did not ask you—the culvert to be put in there, did you consider that a benefit to the railroad?

"*A.* I considered it would be a benefit to the railroad.

"*Q.* Did you consider it would be a benefit to anyone else besides the railroad?

"*A.* No.

"*Q.* Do you think the railroad should pay for its culvert?

"*A.* I do.

"*Q.* In making your assessments, did you make it with the idea that the railroad should pay for all of the benefits received in this drain including the benefits of the culvert to be placed there?

"*A.* Yes."

Mr. Selle, a member of the board of review, testified:

"*A.* We figured, that the railroad got that road through there, and this culvert was not large enough, and we figured that for the benefit of the railroad.

"*Q.* Now, supposing, Mr. Selle, that there has been a culvert at the point of this drain beneath the railroad tracks of substantial construction of the size provided in the specifications of the drain; in

other words, supposing that there was already there a sufficient culvert so that not a dollar would have to be spent in enlarging it, if you had found that condition to exist, would you have assessed the Detroit & Mackinac 12 per cent.? * * *

"*A.* No, I would not. I do not think we would have assessed this."

The assessments against the railroads may not have been intended as a fraud, but they amount to that.

In *Kansas City Southern Rys. Co.* v. *Road Imp. Dist.*, 256 U. S. 658 (41 Sup. Ct. 604), benefits were assessed against plaintiff $7,000 per mile of main track, $67,900. Farm lands were divided into five zones and assessed $12, $10, $8, $6, and $4 per acre, in the order named without reference to value or improvement. Some other property was assessed on a like plan. The assessment was challenged as arbitrary and in violation of the due process and equal protection clauses of the 14th Amendment. It was there held that there was discrimination so palpable and arbitrary as to amount to a denial of equal protection of the law.

The assessment in the case at bar is so palpably arbitrary and in effect fraudulent that no further authorities need be cited.

That we may not sit in review of the judgment of the commissioner and the board of review does not leave us powerless to do equity.

We can and should set aside the assessment against the properties of plaintiffs and send the proceeding back for a new assessment.

The decrees are reversed, with costs, and decrees entered for plaintiffs in accordance herewith.

WIEST, C. J., and BUTZEL, McDONALD, and POTTER, JJ., concurred with CLARK, J.