MICHIGAN MUTUAL LIFE-INSURANCE CO. *v.* HARTZ.[1]

1. TAXATION—VALIDITY OF PERSONAL ASSESSMENT—CERTIORARI—QUESTIONS REVIEWABLE.

Where, on *certiorari* to review the action of the circuit court in granting a *mandamus* to strike out a personal property assessment, the record fails to show that relator was possessed of any taxable personal property, the appellate court may properly refuse to consider the legal questions supposed to be involved.

[1] Rehearing denied February 11,1902.

2. Same — Life-Insurance Companies — Mode of Assessment — Computation of Liabilities—Constitutional Law.

> 2 Comp. Laws, §§ 5102, 7207, make it the duty of the commissioner of insurance to determine the liabilities and make a valuation of the outstanding policies of life-insurance companies, and provide that, in making such valuation, the rate of interest assumed shall be four per cent., and the rate of mortality shall be that established by the American experience life table. 1 Comp. Laws, § 3834, provides that the taxable personal property of insurance companies organized under the laws of this State shall be ascertained by deducting the value of the real property on which the company pays taxes from its net assets above liabilities, as determined and shown by the last report of the commissioner of insurance. *Held*, that the method of taxation so provided is not obnoxious to the constitutional requirement of uniformity.

*Certiorari* to Wayne; Donovan, J. Submitted October 8, 1901. Decided December 21, 1901.

*Mandamus* by the Michigan Mutual Life-Insurance Company against John C. Hartz and Benjamin Guiney, composing the board of assessors of the city of Detroit, and the common council of said city, to compel respondents to strike from the assessment roll a personal assessment against relator. From an order granting the writ, respondents bring *certiorari*. Affirmed.

*C. A. Kent*, for relator.

*John W. McGrath* and *P. J. M. Hally*, for respondents.

Moore, J. Relator sought in the court below a *mandamus* to compel the assessing officers of Detroit to strike from the assessment roll a personal assessment against the company. The *mandamus* was granted, and the case is brought here by respondents by *certiorari*.

Relator is a life-insurance company organized under the laws of Michigan. 2 Comp. Laws, §§ 7190–7220. Section 7200, 2 Comp. Laws, provides for annual reports of life-insurance companies to the secretary of state, and their

report to the governor annually. Section 7207 requires every company to furnish the secretary of state with the necessary *data* for tabulating and determining all its liabilities. It provides that every life-insurance company shall annually "furnish the secretary of state the *data* necessary for determining the amount of its liabilities, and the valuation of all its outstanding policies, to be made by the secretary of state, or under his authority; and, in making such valuation, the rate of interest to be assumed shall * * * be four per centum per annum, * * * and the rate of mortality shall be that established by the 'American Experience Life Table.'" The duties of the secretary of state in this regard were transferred to the commissioner of insurance. 2 Comp. Laws, § 5102.

The relator made its reports as required by law. The net assets of the company as shown by these reports were for the year ending December 31, 1899, $342,842.47, and the real estate of the company was $409,127.16. The net assets for the year ending December 31, 1900, were $413,-368.89, and the real estate was valued at $425,708.77. In the spring of 1901 the assessors notified relator they would assess against it a personal assessment of $413,360. A petition for *mandamus* was filed, which avers the reports of the commissioner of insurance, and also that said reports are a true statement of said company's assets, liabilities, and surplus, and the form in which said surplus was invested. The respondents made answer, which admits the reports of the commissioner of insurance, but claims not to be bound by them, and avers that the respondents have had no opportunity of determining whether or not the statements of the reports are true. The answer admits that the real estate in Michigan cannot be taxed as personal property, but claims that the real estate in other States may be thus taxed. It avers, also, that an item in the report for 1900 of $12,411.47, for premiums paid in advance, is not a liability. It also avers that the respondents have fixed the liabilities of the company at $5,365,798.18, instead of $6,378,209.63, the amount

determined by the commissioner, and claims that the difference between these amounts is taxable as personal property.

The circuit judge issued an order to show cause, and, upon the hearing before him, testimony was taken showing that the computation of liabilities was made by the insurance commissioner, or an actuary from his office, who checks over and approves the calculations made by the company; that the reserve on the policies for the year ending December 31, 1900, was $6,351,160.03; that, when the table of mortality and rate of interest are fixed, the calculation is a purely mathematical one, and the result certain; that this reserve is accepted everywhere where the rate of interest and mortality tables are the same. Testimony was also given showing that the credits of the company were put in at their face, with interest, and the real estate at cost, save where it has a market value in excess of this; that the commissioner has never complained that the value is too low. The evidence shows that the reports to the commissioner of insurance are correct. Respondents put in evidence, subject to objection, that many policies of the company fail to be continued on account of the nonpayment of premiums, and that this is not considered in calculating the reserve. Relator gave testimony tending to show that this failure to pay premiums is an injury to relator.

The circuit judge found that the item of $12,411.47, premiums paid in advance, constitutes a liability against the company, and that, when the value of the real estate upon which the relator paid taxes was deducted from its net assets, there was no personal property which the assessors could properly assess against the relator. The circuit judge based his ruling upon that part of section 3834, 1 Comp. Laws, reading as follows:

"In computing the taxable property of insurance companies organized under the laws of this State, the value of the real property on which a company pays taxes shall be deducted from its net assets above liabilities, as determined and shown by the last report of the commissioner

of insurance, and the remainder shall be the amount of personal property for which the company shall be assessed."

The allegation of error in the affidavit for *certiorari* is as follows:

"Your petitioners represent that they are advised that the court erred in granting said writ of *mandamus*, for the reason that section 3834 of the Compiled Laws of 1897, in so far as it adopts the determination of the commissioner of insurance as a basis of the taxation of life-insurance companies, violates section 11 of article 14 of the Constitution of the State of Michigan, requiring the legislature to provide a uniform rule of taxation."

The primary question in the case is whether it is shown the relator had taxable personal property which ought to have been put upon the roll. The record fails to show any such property, and for that reason we might properly decline to review the action of the circuit judge; but, inasmuch as the constitutionality of the statute is raised, we may as well pass upon it.

This statute was passed a number of years ago, and was before this court in *Standard Life & Accident Ins. Co. v. Board of Assessors of Detroit*, 91 Mich. 517 (52 N. W. 17), and *Id.*, 95 Mich. 466 (55 N. W. 112). In these cases it was held that, in computing the personal property assessable against the company, there should be deducted from the net assets of the company the value of the real-estate mortgages held by the company. Evidently the question of the constitutionality of the act did not occur to any one.

The position of counsel in this case, as stated in their brief, is as follows:

"Section 11 of article 14 of the Constitution provides that 'the legislature shall provide an uniform rule of taxation, except on property paying specific taxes; and taxes shall be levied on such property as shall be prescribed by law.' Section 12 provides that 'all assessments hereafter authorized shall be on property at its cash value.' Respondents insist that section 7207 provides an arbitrary rule for the determination of the amount of the liability of

life-insurance companies, and section 3834 makes the determination of the insurance commissioner by that arbitrary rule the basis of the taxation of such companies, and is therefore unconstitutional."

We do not agree with counsel in this conclusion. It is true that it is the duty of the legislature to provide a uniform rule of taxation, except upon property paying specific taxes. It is also true that the matter of deciding the value of property, about which men may differ, calls for the exercise of judgment. The value of a large and complex business may require the exercise of the judgment of men trained in the business, and possessing the knowledge not possessed by the ordinary man. We all know that the business of life insurance has attained enormous proportions. It affects so many interests that the State has attempted to say under what conditions it may be conducted, and has created a department of insurance for the purpose of supervising the business. The legislature has given the insurance commissioner very large powers, calculated to enable him to find out what are the assets of any and all companies doing business in the State. The legislature, evidently believing that the commissioner was especially qualified to determine the amount of the assets of insurance companies, passed the statute in question. There is nothing in the record to indicate that tax assessors would be more likely to do this work well than would the insurance commissioner; but, whether they would or not, the legislature has seen fit to impose the duty upon the insurance commissioner. The statute applies to all insurance companies organized under the laws of this State, and does not violate the constitutional requirement of uniformity of taxation.

The action of the circuit judge is affirmed.

MONTGOMERY, C. J., HOOKER and LONG, JJ., concurred. GRANT, J., did not sit.