331 Mich. 504 (1951)
50 N.W.2d 143
In re HURD-MARVIN DRAIN.
MICHIGAN CENTRAL RAILROAD COMPANY
v.
JACKSON COUNTY DRAIN COMMISSIONER.
Docket No. 28, Calendar No. 45,210.
Supreme Court of Michigan.
Decided December 3, 1951.
*506 McKone, Badgley, McInally & Kendall and George H. Wyatt (J.J. Danhof, of counsel), for plaintiffs.
Robert Crary and Robert Crary, Jr., for defendants.
CARR, J.
The general drain law of the State[*] provides for locating, constructing and maintaining drains when conducive to the public health, convenience and welfare. Chapter 7 of the law (CL 1948, § 267.1 et seq. [Stat Ann and Stat Ann 1949 Cum Supp § 11.67 et seq.]) regulates the procedure to be observed when it is found necessary to clean, widen, deepen, straighten, and extend, any previously constructed drain. Acting under the provisions of said chapter the defendant drain commissioner is proceeding with a project having for its purpose, as indicated by the record, the deepening, widening and cleaning out of a drain established in Jackson county some 40 to 50 years ago, designated as the Hurd-Marvin drain. It appears that the drainage district to be served by the project is substantially identical with that established at the time of the original construction. The preliminary steps taken by defendant drain commissioner are not questioned.
Chapter 7, § 1, of the drain law requires that the commissioner, as soon as practicable after the order of determination has been filed, shall "go over the line of said drain and fix the per cent. of the cost of such work that the State of Michigan, any county, *507 township, city or village and the owners of land benefited thereby shall bear: Provided, That such apportionment shall be made according to the benefits received and shall be subject to appeal the same as in the first instance." The requirement as to the basis of the apportionment is repeated in section 3 of the chapter (CL 1948, § 267.3 [Stat Ann § 11.69]). The total cost of the work to be done in the instant case was estimated at $66,243.10, and the defendant drain commissioner proceeded to apportion such cost to the State, the county, the township of Blackman, and the owners of lands within the assessment district.
The drain in question is crossed by the Michigan Central Railroad, which is operated by the plaintiff New York Central Railroad Company under lease, in 2 places, one on the main line and the other on the Grand Rapids-Saginaw division. At the latter location a new culvert consisting of two 72-inch tubes are to be installed, pursuant to the plans on which the drain commissioner has let a contract for the work, in lieu of a culvert 48 inches in diameter which was installed by the Michigan Central Railroad Company in 1898 and apparently used subsequently as a part of the Hurd-Marvin drain. Of the total estimated cost of the project the aggregate sum of $4,948.75 was apportioned to the plaintiffs as the benefit to 3.2 acres of land within the right-of-way of the subdivision in proximity to the crossing. Other property of the plaintiffs was also assessed for benefits but the controversy here has reference principally to the apportionment to the 3.2 acres mentioned.
Claiming that they were aggrieved by the apportionment made by the drain commissioner, plaintiffs petitioned the probate court for the appointment of a board of review as provided for by chapter 6, § 5, of the drain law (CL 1948, § 266.5 [Stat Ann *508 § 11.60]). In accordance with the request made, a board was appointed. Hearings were had and proofs introduced with reference to the acts of the drain commissioner in making the apportionment to the lands within the drainage district of the estimated cost of the project. The members of the board viewed the lands referred to and reached the conclusion, based thereon and on the proofs received, that the assessment of benefits as made by the drain commissioner was "without manifest error." The appeal was, in consequence, dismissed. Plaintiffs then applied to the circuit court of Jackson county for a writ of certiorari to review the acts of the drain commissioner and of the board of review, claiming in the affidavit for the writ that the drain commissioner had not made a proper and lawful apportionment of benefits against the property of plaintiffs and that the decision of the board of review was erroneous. The writ was issued and, following a hearing in the circuit court, an order was entered affirming the apportionment and denying the relief sought by plaintiffs. From the order dismissing the writ plaintiffs have appealed, alleging that in the proceedings by the drain commissioner and by the board of review there was error requiring reversal.
In the decision upholding the action of the drain commissioner the board of review did not make specific findings of fact, merely indicating the conclusion that no error had been established. On behalf of plaintiffs it is argued that because of the form of the decision the circuit court did not have before it the findings of fact upon which it was based, and that, in consequence, they have been deprived of their rights without due process of law. It is conceded that the point raised is a novel one, at least insofar as this State is concerned, and no authority is called to our attention that supports the argument. The appointment of a board of review under *509 the drain law and the functioning of such board are governed by the express provisions of the statute. The legislature has not seen fit to require the making of a report setting forth specifically the findings of fact on which the conclusion is based. We may not read into the law a requirement that the law-making body has seen fit to omit. In the instant case the board of review made its report in the form customarily followed under the drain law. In view of the situation presented we are not impressed that plaintiffs have been deprived of any inherent right, guaranteed by either State or Federal Constitution. The claim that they have been so prejudiced because of the form in which the decision of the board was rendered is not tenable.
It is also contended by appellants that the drain commissioner in order to properly perform his statutory duties, in assessing the property within the drainage district, should have employed a definite formula, or formulae, in reaching his results. However, as suggested by counsel for defendants, the statute does not prescribe any specific formula but, rather, in terms requires the apportionment of the cost of the project to be made on the basis of benefits received. The language used implies that, in determining what portion of the cost each parcel shall bear, the commissioner shall take into consideration all surrounding facts and circumstances tending to throw light on the question as to the extent of the benefits resulting from the improvement, with due regard to the location of the land, the nature of the soil, the effect, if any, that drainage will have on the adaptability of the land for use, and, as the testimony taken before the board of review suggests, other factors pertinent in each instance. It is apparent from the nature of the problem that no definite formula, applicable in all cases, may be followed. Our attention is not called to any decisions *510 in which courts have undertaken to fix such a formula. In the instant case one of plaintiffs' engineers, testifying in their behalf, referred to the so-called "runoff" factor as a matter properly to be considered in the assessment of benefits, but the witness further stated that other factors must also be taken into account in determining the extent of benefits to any particular parcel. We do not understand that on this appeal the plaintiffs contend that the Talbot formula, to which the witness alluded as involving the runoff factor, should have been applied by the drain commissioner in making assessments in the instant case, or that it can be applied in every instance, without reference to the character, location and use of the property, and other pertinent factors. It is doubtless true that in many instances rapidity of drainage is a matter to be considered in the determination of benefits received, but under the statute the determination of the factors affecting the result is committed to the drain commissioner and the board, if appointed, subject to judicial review by writ of certiorari. Obviously the problem is one requiring the proper determination of pertinent facts, and the basing of action thereon. It is equally imperative that, in the determination of apportionment, factors that have no legitimate bearing on a correct result must be disregarded. The serious question at issue in the present case is whether the defendants performed their duties in the manner required by the provisions of the drain law.
In making the apportionment of benefits to the parcel of land, 3.2 acres in extent, above referred to, the drain commissioner included the cost of the material entering into the culvert beneath the roadbed on the Grand Rapids-Saginaw division. The cost of the labor necessary for the installation was assessed on the drainage district generally. The following excerpt from the testimony of the drain commissioner, *511 on the hearing before the board of review, indicates the situation:
"Q. Now, included in the railroad's assessment  I want to go over this if I may  of benefit is $2,332.80, being the material?
"A. Cost of the structure.
"Q. Cost of the structure?
"A. That is based upon actual breakdown of the bid as received from the contractor as his cost, his proportionate cost of the drain applied to the railroad construction.
"Q. Then in addition to that you added 4% of the total cost of the drain. Is that correct?
"A. Yes, I think that's what I said. There is a copy of that somewhere. If that's what that statement is, that's what it is.
"Q. And that amounts to $2,649.72, which, added to the material cost of $2,232.80, comes to $4,982.50 which approximates the $4,948.75 which, you say, is allotted to these 3.2 acres?
"A. If you are quoting the figures the way I have them, that is what I mean.
"Q. So you want the board to understand that for the apportionment of benefit to the railroad on these 3.2 acres there is 4% of the total cost of the drain allotted?
"A. That is exactly what I want to express."
The witness further testified that the total cost of the culvert, including the labor, will be $11,440 or 17.27% of the estimated cost of the project. It is obvious from his testimony that he considered that he was wholly justified, and within the scope of his authority under the statute, in charging to the 2 plaintiffs the cost of the material in the new culvert. His action in so doing, however, overlooks the fact that the culvert is a part of the drain and that the entire drainage district is benefited thereby. It could not properly be separated from the rest of the project and its cost assessed in the manner indicated.
*512 Counsel for defendants call attention to chapter 7, § 9, of the drain law (CL 1948, § 267.9 [Stat Ann § 11.75]) which contains the following provision:
"In case the necessity for cleaning out any drain arises from the act or neglect of any land owner, said act or neglect shall be taken into consideration by the commissioner in making the apportionment."
On behalf of defendants it is argued that said section is applicable in the instant case, and the claim is made that the plaintiffs by their railroad embankment retarded the proper flow of water in the Hurd-Marvin drain. Emphasis is placed on the fact that in 1898 the plaintiffs removed a wooden culvert that was approximately 4 x 7 feet in size and substituted for it a metal pipe 4 feet in diameter. The drain commissioner, as is evidenced by his testimony, thought that the smaller culvert was inadequate to properly take care of the water. In 1946, or 1947, the water was so high that it on one occasion overflowed the roadbed. There is no proof of such an occurrence at any other time. As before noted, the culvert in question was apparently adopted as a part of the original Hurd-Marvin drain. There is no claim that any action was ever taken to compel the plaintiffs to install a larger culvert.[**] It may be noted also that while the exact date of the construction of the Hurd-Marvin drain does not appear in the record, it is a fair inference that it followed the installation of the smaller culvert by the Michigan Central Railroad Company in 1898. On the record before us the application of the statute relied on by defendants, even if given the construction contended for by them, may well be questioned. In any event, we do not think that it was the intention of the legislature in the enactment of the provision quoted to modify the mandate that the apportionment *513 of the cost of a drain, or of the cleaning out and straightening thereof, must be made on the basis of benefits received.
It is the claim of the plaintiffs that discrimination against them in the assessment of the property in question, the right-of-way of the Grand Rapids-Saginaw division within the drainage district, is indicated by the great disparity between the apportionment of benefits to such land and the assessments by the drain commissioner on other property in the district. Paralleling the right-of-way of plaintiffs is property owned by the Consumers Power Company, formerly the right-of-way of an electric railway and now used for poles supporting wires conducting electricity. Such parcel, containing approximately 6 1/2 acres, was assessed $41.46, or $6.38 per acre. Other land in the upper part of the drainage district, referred to as the Hayes Industries' property, was assessed at $6.39 per acre, and on the main line of the plaintiffs' railroad assessments were made at the rate of $6.37 and $6.44 per acre, as compared to the assessment on the Grand Rapids-Saginaw division at the rate of $1,546.49 per acre. Apparently farm property was assessed at a lower rate than land used for industrial purposes. In one instance 65 acres was assessed in the aggregate amount of $93.60. Other parcels were assessed at varying rates, in each instance a small percentage of the rate of assessment made against the 3.2 acres of right-of-way on the Grand Rapids-Saginaw division. The great disparity existing is such as to suggest that the proportion of the cost of the drain charged to plaintiffs, of which they here complain, was unreasonable, arbitrary, and discriminatory.
In support of their position plaintiffs rely on the decision of this Court in Michigan Central R. Co. v. Baikie, 249 Mich 138. There the defendant county drain commissioner made his apportionment under *514 the statute of the cost of cleaning out, widening and deepening, a certain drain located partly in Arenac county and partly in Bay county. As a part of the project it was necessary to replace small culverts with larger ones. Claiming that the assessments against their property were made on an improper basis and involved discrimination, the Michigan Central Railroad Company and the Detroit & Mackinac Railway Company brought suits in equity to restrain the levy of the taxes. Decrees were entered in the trial court dismissing the bills of complaint. On appeal this Court reversed by a 5 to 3 decision. The record in the case discloses that in accordance with the statute then in effect each railroad company was required to make beneath its roadbed an opening for a culvert, and that damages awarded to the plaintiffs because of the necessity of doing such work were fixed at the sum of $3,200 to the Michigan Central Railroad Company and $3,500 to the Detroit & Mackinac Railway Company. In making his assessments the drain commissioner charged against each of the companies the amount of the damages so awarded, thus including in each assessment, ostensibly made on the basis of benefits received, the cost of installing the culvert. Such action was held to have been unauthorized and improper. The Court also discussed the great disparity between the assessments made against the railroad rights-of-way and those on other lands within the drainage district, such disparity being comparable to that existing in the case at bar. It was held that the assessments against plaintiffs were "palpably arbitrary and in effect fraudulent." They were accordingly set aside and the cases remanded for new assessments.
In reaching the conclusion indicated the majority opinion in the Baikie Case cited the decision of the United States Supreme Court in Kansas City Southern *515 R. Company v. Road Improvement District Number 6, 256 US 658 (41 S Ct 604, 65 L ed 1151). That case involved special assessments for benefits received by property in the defendant district, which was created by act of the legislature, from the construction of 11.2 miles of gravel road. The plaintiff railway companies were assessed on their right-of-way at the rate of $7,000 per mile of main track located within the district. Farming land was divided in 5 zones and assessed, according to zone, from $4 to $12 per acre. In reversing the Supreme Court of Arkansas, which had upheld the assessment, it was said:
"The statute under consideration prescribes no definite standard for determining benefits from proposed improvements. The assessors made estimates as to farm lands and town lots according to area and position and wholly without regard to their value, improvements thereon, or their present or prospective use. On the other hand, disregarding both area and position, they undertook to estimate benefits to the property of plaintiffs in error without disclosing any basis therefor, but apparently according to some vague speculation as to present worth and possible future increased receipts from freight and passengers which would enhance its value, considered as a component part of the system.
"Obviously, the railroad companies have not been treated like individual owners, and we think the discrimination so palpable and arbitrary as to amount to a denial of the equal protection of the law. Benefits from local improvements must be estimated upon contiguous property according to some standard which will probably produce approximately correct general results. To say that 9.7 miles of railroad in a purely farming section, treated as an aliquot part of the whole system, will receive benefits amounting to $67,900 from the construction of 11.2 miles of gravel road seems wholly improbable, *516 if not impossible. Classification, of course, is permissible, but we can find no adequate reason for what has been attempted in the present case. F.S. Royster Guano Co. v. Virginia, 253 US 412, 415 (40 S Ct 560, 64 L ed 989). It is doubtful whether any very substantial appreciation in value of the railroad property within the district will result from the improvements; and very clearly it cannot be taxed upon some fanciful view of future earnings and distributed values, while all other property is assessed solely according to area and position. Railroad property may not be burdened for local improvements upon a basis so wholly different from that used for ascertaining the contribution demanded of individual owners as necessarily to produce manifest inequality. Equal protection of the law must be extended to all."
The above case was cited and followed in Thomas v. Kansas City Southern R. Co., 261 US 481 (43 S Ct 440, 67 L ed 758), in which it was held that the special assessment against the property of the railroad companies was so discriminatory as to amount to a denial of the equal protection of the laws guaranteed by the Fourteenth Amendment to the Federal Constitution. Of similar import is Road Improvement District No. 1 v. Missouri Pacific R. Co., 274 US 188 (47 S Ct 563, 71 L ed 992).
There is nothing in the record before us on which to base a conclusion that the revenues of the plaintiffs, or of either of them, will be increased as a result of the cleaning out and deepening of the Hurd-Marvin drain, or that there will be any reduction in costs of operation on the Grand Rapids-Saginaw division. We do not find in the testimony of the defendant drain commissioner anything to suggest that he based his apportionment of benefits against the property of plaintiffs on any such finding. Rather, it appears that he made the apportionment in question, in part at least, because of the increased *517 cost of completing the project resulting from the necessity of putting a new culvert beneath the tracks on plaintiffs' right-of-way. In doing so he overlooked the mandate of the statute which required him to act on the basis of benefits received. The amount so charged, embracing as it does the cost of the material in the culvert, together with an additional 4% of the cost of the project on the theory of benefits received, cannot be sustained. As before indicated, the disparity between the assessments on the various properties in the district indicates that, insofar as plaintiffs are concerned, the apportionment against the right-of-way of the Grand Rapids-Saginaw division was so unreasonable and arbitrary as to constitute a denial to the plaintiffs of the equal protection of the laws guaranteed by both State and Federal Constitutions.
The order of the trial court is reversed, and the case is remanded with directions to vacate said order and to require the defendant drain commissioner to make a new apportionment of the cost of the project in accordance with the statute, disregarding in making each assessment all factors not involved in determining the benefits received. Plaintiffs may have costs.
REID, C.J., and BOYLES, NORTH, DETHMERS, BUSHNELL, and SHARPE, JJ., concurred. BUTZEL, J., did not sit.
NOTES
[*] PA 1923, No 316, as amended (CL 1948, § 261.1 et seq., as amended [Stat Ann and Stat Ann 1949 Cum Supp § 11.1 et seq.]).
[**] See CL 1948, § 277.4 (Stat Ann § 11.137).