MICHIGAN BASIC PROPERTY INSURANCE ASSOCIATION
v OFFICE OF FINANCIAL AND INSURANCE REGULATION

Docket No. 293766. Submitted May 4, 2010, at Lansing. Decided June 8, 2010, at 9:00 a.m.

The Michigan Basic Property Insurance Association filed a petition for review in the Ingham Circuit Court against the Office of Financial and Insurance Regulation and the Commissioner of the Office of Financial and Insurance Regulation. Petitioner alleged that the commissioner exceeded his authority by rejecting its requested rate increase of 18.9 percent for some of its lines of home insurance and that the commissioner's order was contrary to law and not supported by the record. The court, Joyce Draganchuk, J., agreed with petitioner and reversed the commissioner's order of disapproval. Respondents appealed.

The Court of Appeals *held*:

1. MCL 500.2930a(1) addresses how petitioner must calculate the rates it charges for home insurance. It provides that the rates charged in each territory "shall be equal to the weighted average of the 10 voluntary market insurer groups with the largest premium volume in this state." The statutory language is ambiguous because it fails to specify the subject matter of the weighted average and is equally susceptible to more than one meaning.

2. In his expertise, the commissioner concluded that petitioner's rate calculation under MCL 500.2930a(1) was improper because it was premised on a weighted average of "base rates." The commissioner acknowledged that base rates had been used in the past, but noted that in recent years base rates had become inflated to account for discounts that ultimately led to the premium actually charged to the insured. Therefore, when individuals sought insurance from petitioner, as a last resort, the use of base rates to calculate their premiums was no longer fair, reasonable, equitable, and nondiscriminatory, as required by MCL 500.2920(2), and the commissioner ordered petitioner to calculate its rates using a weighted average of premiums charged. Respondents' construction of the statute was in accordance with the intent of the Legislature, and no cogent reasons existed for

overruling respondents' interpretation. The circuit court erred by reversing the commissioner's decision.

Reversed.

BANDSTRA, P.J., concurred with the majority and wrote separately to note that while the statutory language of MCL 500.2930a(1) is ambiguous, a close reading of that language suggests that the subject matter of the weighted average is the "rates charged," i.e., the actual premiums that result from base rates reduced by applicable discounts, referred to earlier in the same clause of the statute.

INSURANCE — INSURANCE COMMISSIONER — BASIC PROPERTY INSURANCE ASSOCIATION — HOME INSURANCE — RATES — CALCULATION.

The rates charged by the Michigan Basic Property Insurance Association for home insurance generally must be equal to the weighted average of the 10 voluntary market insurer groups with the largest premium volume in Michigan; the weighted average must be based on premiums charged rather than base rates (MCL 500.2930a[1]).

*Dykema Gossett PLLC* (by *Lori McAllister*) for petitioner.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Christopher L. Kerr* and *M. Elizabeth Lippitt*, Assistant Attorneys General, for respondents.

Before: BANDSTRA, P.J., and FORT HOOD and DAVIS, JJ.

FORT HOOD, J. Respondents appeal by leave granted the circuit court's order concluding that the insurance commissioner exceeded his authority by disapproving petitioner's requested rate increase. We reverse.

Petitioner, the Michigan Basic Property Association, is a legislative creation. MCL 500.2920. It provides property insurance to qualified persons who have been unable to obtain insurance in the regular market. MCL 500.2901 *et seq*. Respondent Commissioner of the Office of Financial and Insurance Regulation (insurance com-

missioner) must approve petitioner's plan of operation and any changes to that plan. MCL 500.2920(2).

On March 11, 2008, petitioner submitted a rate level adjustment for its home insurance program addressing rate levels for its HO-2 (home), HO-4 (apartment), and HO-6 (condominium) lines of insurance. Specifically, petitioner requested a rate increase of 18.9 percent based on a report prepared by its actuary. The report stated that the rate increase was premised on the actuarial method employed and that the use of a different accepted actuarial method would have resulted in a rate decrease:

> The Association respectfully wishes to advise your office that further investigation and research by our actuaries has determined that had the Association followed other actuarially accepted methods for determining its rate levels (like the Form 3 methodology currently in the statute), the change now being requested would have been, in fact, an overall statewide decrease in rates.

An analyst for respondents contacted petitioner's president, noting that the calculation of rates was premised on the weighted base rate average of the top 10 insurer groups, when the appropriate computation would use the "weighted average of actual charged premium [sic] which would include discounts." Consequently, petitioner was asked to submit actuarial data to determine the rate levels based on the "weighted average of charged, fully discounted premium rates." Petitioner responded that its rate increase was in accordance with the statutory language for computing the appropriate rate. Petitioner also asserted that the application of discounts was a voluntary method of product marketing, and some insurance companies offered discounts premised on the sale of multiple forms of insurance, but petitioner only dealt in home insurance, not automobile insurance.

The insurance commissioner issued an order disapproving the proposed rate increase. The rejection of the rate increase was premised on multiple considerations. First, the commissioner rejected the assertion that the rate increase was consistent with the weighted-average language of MCL 500.2930a:

> In determining the "weighted average," [petitioner] has traditionally averaged the base rates of the top 10 insurer groups. This is reflected in the rates filed by [petitioner] on March 12, 2008 for HO-2 (traditional home), HO-4 (apartment), and HO-6 (condominium) lines of insurance. However, rates calculated in this manner are no longer appropriate or lawful.
>
> An insurer begins calculating an individual's premium with the base rate and then applies factors that it has determined relate to the frequency or severity of losses, such as age of dwelling, type of construction, and safety devices. Several years ago, final premiums charged were not, on average, greatly disparate from the base rates.
>
> This is no longer true. New rating factors, especially the use of insurance credit scoring, have greatly influenced the calculation of premiums. Base rates have been driven up so that insurers may deeply discount the rates of persons with high insurance credit scores. Base rates, which once had some meaningful correlation with expected losses, have now become just a starting point in a methodology that arrives at expected losses.

Next, the commissioner held that petitioner was required to conform to the requirements of MCL 500.2109(1)(c), which provides that rates may not be unfairly discriminatory in relation to another rate for the same coverage. A rate was not unfairly discriminatory if supported by a reasonable justification for any disparity, a reasonable classification system, sound actuarial principles, and loss and expense statistics. The insurance commissioner held that a reasonable justification had not been established:

> With regard to the current rate filing, because of its reliance on base rates, the differential between the rates is not reasonably justified by differences in losses. There is not a reasonable justification because there is not a reasonable classification system or support by actual and credible loss statistics. According to information from [petitioner], actual and credible loss statistics would support a reduction in rates by 6% rather than the proposed increase of 18.9%.

Because the justification was deficient, the insurance commissioner ordered petitioner to bring its rates in conformity with MCL 500.2109(1)(c).

Lastly, the insurance commissioner held that the rates, as computed by petitioner, did not conform to the requirement that the insurance pool adopt a plan of operation that ensured "the fair, reasonable, equitable, and nondiscriminatory manner of administering the pool . . . ."[1] MCL 500.2920(2). Consequently, the insurance commissioner ordered amendment of the plan of operation to provide that home insurance rates in the future would be calculated using the average premium charged by the top 10 insurer groups rather than the base rates of the top 10 insurer groups.

On July 10, 2008, petitioner filed its petition for review in the circuit court, alleging that the insurance commissioner's order was contrary to law, exceeded his statutory authority, and was not supported by the record and competent evidence. The circuit court concluded that MCL 500.2930a(1) was ambiguous and, following a review of other statutory provisions including those concerning automobile insurance rates, concluded that the Legislature understood the difference between "premiums" and "base rates." The circuit

---

[1] Petitioner is composed of most insurers authorized to transact basic property and home insurance business in Michigan and is also known as "the pool." MCL 500.2920(1).

court also held that the insurance commissioner was unable to alter a longstanding interpretation premised on changed circumstances in order to avoid "any perceived excessiveness or unfair discrimination." Therefore, the circuit court reversed the insurance commissioner's disapproval of the 18.9 percent rate increase. We granted respondents' application for leave to appeal.

### I. STANDARD OF REVIEW AND ADMINISTRATIVE AGENCIES

The Michigan Constitution provides for judicial review of administrative decisions, providing in relevant part:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law. [Const 1963, art 6, § 28.]

However, the application of the standard of review is contingent on the type of challenge at issue and must be in accordance with separation-of-power principles. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 97-100; 754 NW2d 259 (2008). If a rulemaking function is at issue, the reviewing court must first determine whether the Legislature properly delegated authority to the agency to promulgate the rule at issue. The legality of the delegation is subject to review de novo. If the delegation was proper, the reviewing court must examine whether the agency exceeded the authority granted

by the statute. *Id.* If the examining court is asked to review the agency's fact-finding function in contested cases, the court examines whether the findings were supported by competent, material, and substantial evidence on the entire record. The factual findings, particularly the review of credibility of witnesses and the weight of the evidence, are entitled to deference by the reviewing court. *Id.*

However, the agency's interpretation of a statute "is not binding on the courts, and it cannot conflict with the Legislature's intent as expressed in the language of the statute at issue." *Id.* Rather, a reviewing court must give "respectful consideration" to the agency's construction of the statute and provide "cogent reasons" for overruling an agency's interpretation. *Id.* However, "when the law is 'doubtful or obscure,' the agency's interpretation is an aid in discerning the Legislature's intent." *Id.* (citation omitted). Thus, when a reviewing court examines an agency interpretation of a statute, "the primary question presented is whether the interpretation is consistent with or contrary to the plain language of the statute." *Id.* Respectful consideration is not equal to deference. Statutory construction is the domain of the judiciary, and therefore, the agency's interpretation is not entitled to more weight. *Id.* Rather, "the agency's interpretation can be particularly helpful for 'doubtful or obscure' provisions." *Id.* (citation omitted).

The rules regarding judicial review of statutory language are well established. Statutory interpretation presents questions of law subject to review de novo. *Hunter v Hunter*, 484 Mich 247, 257; 771 NW2d 694 (2009). "The fundamental purpose of judicial construction of statutes is to ascertain and give effect to the intent of the Legislature." *Amburgey v Sauder*, 238

Mich App 228, 231-232; 605 NW2d 84 (1999). Once the intent of the Legislature is discovered, it must prevail regardless of any rule of statutory construction to the contrary. *In re Certified Question,* 433 Mich 710, 722; 449 MW2d 660 (1989). The language of the statute expresses the legislative intent. *Dep't of Transp v Tomkins,* 481 Mich 184, 191; 749 NW2d 716 (2008). A clear and unambiguous statute is not subject to judicial construction or interpretation. *Id.* Stated otherwise, when a statute plainly and unambiguously expresses the legislative intent, the role of the court is limited to applying the terms of the statute to the circumstances in a particular case. *Id.* Yet "a dogged literalism should not be employed to defeat the Legislature's intent." *Goodridge v Ypsilanti Twp Bd,* 451 Mich 446, 453 n 8; 547 NW2d 668 (1996).

A statutory provision is ambiguous if it irreconcilably conflicts with another provision or when it is equally susceptible to more than one meaning. *Fluor Enterprises, Inc v Dep't of Treasury,* 477 Mich 170, 177-178 n 3; 730 NW2d 722 (2007). A statutory provision should be viewed as ambiguous only after all other conventional means of interpretation have been applied and found wanting. *Id.* at 178 n 3. If a statute is ambiguous, judicial construction is appropriate. *Capitol Props Group, LLC v 1247 Ctr Street, LLC,* 283 Mich App 422, 434; 770 NW2d 105 (2009). "Where the language of a statute is of doubtful meaning, a court must look to the object of the statute in light of the harm it is designed to remedy, and strive to apply a reasonable construction that will best accomplish the Legislature's purpose." *Marquis v Hartford Accident & Indemnity (After Remand),* 444 Mich 638, 644; 513 NW2d 799 (1994). When construing statutes, the terms of statutory provisions with a common purpose should be read *in pari materia. World Book, Inc v Dep't of Treasury,* 459 Mich 403, 416;

590 NW2d 293 (1999). The objective of this rule is to give effect to the legislative purpose as found in statutes addressing a particular subject. *Id.* "Conflicting provisions of a statute must be read together to produce an harmonious whole and to reconcile any inconsistencies wherever possible." *Id.*

When construing a statute, "a court should not abandon the canons of common sense." *Marquis*, 444 Mich at 644. "We may not read into the law a requirement that the lawmaking body has seen fit to omit." *In re Hurd-Marvin Drain*, 331 Mich 504, 509; 50 NW2d 143 (1951). When the Legislature fails to address a concern in the statute with a specific provision, the courts "cannot insert a provision simply because it would have been wise of the Legislature to do so to effect the statute's purpose." *Houghton Lake Area Tourism & Convention Bureau v Wood*, 255 Mich App 127, 142; 662 NW2d 758 (2003). Therefore, when necessary to interpret an ambiguous statute, the appellate courts must determine the reasonable construction that best effects the Legislature's intent. *Id.* The insurance industry is of great public interest, and insurance laws are to be liberally construed in the interests of the public, policyholders, and creditors. *Attorney General v Mich Surety Co*, 364 Mich 299, 325, 337; 110 NW2d 677 (1961); *Tevis v Amex Assurance Co*, 283 Mich App 76, 81; 770 NW2d 16 (2009); *Mich Life Ins Co v Comm'r of Ins*, 120 Mich App 552, 558; 328 NW2d 82 (1982). "To that end we are bound to give full effect to legislative efforts to regulate the business of insurance." *Mich Surety*, 364 Mich at 337.

Administrative agencies are created by the Legislature as " 'repositories of special competence and expertise uniquely equipped to examine the facts and develop public policy within a particular field.' " *Travelers Ins*

*Co v Detroit Edison Co*, 465 Mich 185, 198; 631 NW2d 733 (2001) (citation omitted). "[A]dministrative agencies possess specialized and expert knowledge to address issues of a regulatory nature. Use of an agency's expertise is necessary in regulatory matters in which judges and juries have little familiarity." *Id*. at 198-199. The relationship between the courts and administrative agencies is one of restraint, and courts must exercise caution when called upon to interfere with the jurisdiction of an administrative agency. *74th Judicial Dist Judges v Bay Co*, 385 Mich 710, 727; 190 NW2d 219 (1971). "Judicial restraint tends to permit the fullest utilization of the technical fact-finding expertise of the administrative agency and permits the fullest expression of the policy of the statute, while minimizing the burden on court resources." *Id*. at 728. "Where a statute creates and regulates, and prescribes the mode and names the parties granted right to invoke its provisions that mode must be followed and none other, and such parties only may act." *Taylor v Pub Utilities Comm*, 217 Mich 400, 403; 186 NW 485 (1922).

## II. INSURANCE COMMISSIONER

A separate and distinct state department was established in 1956 and charged with the execution of the laws regarding insurance and surety business. MCL 500.200. It succeeded the insurance bureau, and is now within the Office of Financial and Insurance Regulation. See MCL 500.102(2). The chief officer of the department was originally known as the Commissioner of Insurance and is now the Commissioner of the Office of Financial and Insurance Regulation, and the commissioner personally superintends the duties of the office. MCL 500.202. The purpose of the office is to supervise the business of insurance, and the Legislature

gave the insurance commissioner very large powers and assumed that the commissioner had the qualifications to assess issues affecting the industry. See *Mich Mut Life-Ins Co v Hartz*, 129 Mich 104, 109; 88 NW 405 (1901). "Orders, decisions, findings, rulings, determinations, opinions, actions, and inactions of the commissioner in this act shall be made or reached in the reasonable exercise of discretion." MCL 500.205. "In the reasonable exercise of discretion" is defined to mean "that an order, decision, determination, finding, ruling, opinion, action, or inaction was based upon facts reasonably found to exist and was not inconsistent with generally acceptable standards and practices of those knowledgeable in the field in question." MCL 500.116(c). The commissioner or the commissioner's representative "may examine any or all of the books, records, documents, and papers of any insurer at any time after its articles of incorporation have been executed and filed, or after it has been authorized to do business in this state." MCL 500.222(1). In his discretion, the commissioner may examine the affairs of any domestic insurer. *Id*. The commissioner shall supervise and regulate the actions of petitioner. MCL 500.2941. The commissioner has the power to visit and examine the affairs of petitioner with free access to all documentation maintained by petitioner. *Id*.

### III. THE INSURANCE CODE

The Insurance Code was enacted, in part, "to provide for the continued availability and affordability of automobile insurance and homeowners insurance in this state and to facilitate the purchase of that insurance by all residents of this state at fair and reasonable rates . . . ." Title of 1956 PA 218, the Insurance Code, MCL 500.100 *et seq*. As noted earlier, petitioner "was

created to provide property insurance to qualified persons who cannot get insurance in the regular market."[2] Petitioner's membership consists of most insurers authorized to transact basic property and home insurance in Michigan. MCL 500.2920(1). Petitioner is also known as the "pool." *Id.* The pool shall adopt a plan of operation designed to ensure "the fair, reasonable, equitable, and nondiscriminatory manner of administering the pool . . . ." MCL 500.2920(2). The plan of operation and any amendments to the plan must be submitted to the commissioner for approval. MCL 500.2920(2). The commissioner is charged with monitoring the pool and its plan of operation:

> If for any reason the pool fails to adopt suitable needed amendments to the plan, the commissioner shall adopt and promulgate such reasonable rules as are necessary or advisable to effectuate the provisions of this chapter, which rules shall continue in force until modified by the commissioner or superseded by a plan of operation adopted by the pool and approved by the commissioner. [MCL 500.2920(4).]

Any person with an insurable interest in real or tangible personal property may apply to the pool for basic property insurance, MCL 500.2925(1), and any qualified applicant may apply to the pool for home insurance, MCL 500.2925a(1). If the pool concludes that it is unable to accept the risk of insuring the property, the applicant is entitled to a written statement setting forth the features or conditions of the property that prevent it from being insured. Further, the applicant is entitled to a statement regarding the measures that must be taken in order to qualify for the insurance. MCL

---

[2] Insurance Counselor, Insurance Consumer Information Sheet, *The Michigan Basic Property Insurance Association* <www.michigan.gov/documents/cis_ofis_ip209_24995_7.pdf> (accessed June 7, 2010).

500.2925(3); MCL 500.2925a(3). A person aggrieved by an action or decision by the pool may appeal to the commissioner within 30 days. MCL 500.2943.

As part of its plan of operation, the pool shall adopt reasonable underwriting standards to determine whether a risk is acceptable for basic property insurance by the pool. MCL 500.2924(1). The standards for determining an acceptable risk include, but are not limited to, "protective devices, deductibles, coinsurance provisions, appropriate record keeping and limitations, not inconsistent with this chapter, on the amount of insurance that may be provided with respect to any 1 risk." *Id.* However, "[t]he standards shall be relevant to the perils insured against and shall be consistent with the definition of qualified property, for basic property insurance, contained in [MCL 500.2901]." *Id.*

### IV. MCL 500.2930a

MCL 500.2930a addresses home insurance policies issued by the pool and provides in relevant part:

> (1) Except as otherwise provided in subsection (4)(c), rates charged in each territory by the pool for home insurance shall be equal to the weighted average of the 10 voluntary market insurer groups with the largest premium volume in this state. Rating territories for home insurance established by the pool shall be the same as those utilized by the largest number of insurers by premium volume writing home insurance in this state. Any change in the rates for an HO-2 form replacement cost policy by those insurers that would produce a change in excess of 5% in the HO-2 pool rates for any territory shall be reflected as soon as reasonably practicable in the HO-2 pool rates. HO-2 pool rates shall be reviewed at least annually, but shall not be revised more often than quarterly.

\* \* \*

(4) The pool shall offer at least the following home insurance policy forms:

(a) An HO-2 form replacement cost policy equivalent to the HO-2 form replacement cost policy filed and in effect in this state for a licensed rating organization.

(b) A repair cost policy providing the deductibles, terms and conditions, perils insured against, and types and amounts of coverage equivalent to those provided by the HO-2 replacement cost policy filed and in effect for a licensed rating organization.

(c) An HO-3 form replacement cost policy equivalent to the HO-3 form replacement cost policy filed and in effect in this state for a licensed rating organization. The rates established by the pool for the HO-3 form replacement cost policy offered pursuant to this subdivision shall be calculated to generate a total premium sufficient to cover the expected losses and expenses of the pool related to the HO-3 replacement cost policy that the pool will likely incur during the period for which the premium is applicable. The premium shall include an amount to cover incurred but not reported losses for the period and shall be adjusted for any excess or deficient premiums from previous periods. Excesses or deficiencies from previous periods shall be fully adjusted in a single period or over several periods in a manner provided for in the plan of operation. Rates established by the pool under this subdivision shall not be based upon the weighted average methodology provided for in subsection (1).

The present dispute arises from the language of the first sentence of MCL 500.2930a(1), addressing how to calculate the rates charged in each territory. Petitioner contends that historically the commissioner has approved a calculation using "base rates" and the base rate is the starting point for the final premium after factors are applied to increase or decrease the ultimate premium. Respondents, however, contend that the statutory language is ambiguous because it omits any reference to the subject matter of the weighted average

and the commissioner has the statutory authority to interpret the provision consistently with the Legislature's intent to provide affordable insurance with petitioner as a last resort.

The sentence at issue identifies that an average is obtained, but does not identify the subject matter of the weighted average. It states, "Except as otherwise provided in subsection (4)(c), rates charged in each territory by the pool for home insurance shall be equal to the weighted average of the 10 voluntary market insurer groups with the largest premium volume in this state." MCL 500.2930a(1). Although petitioner contends that the weighted average of "base rates," a term of art employed in the insurance industry, is to be utilized, the statute at issue does not expressly use that term. In fact, the statute at issue does not define "base rates," "rates charged," or "premium." Moreover, the statute does not define the types of insurance that are available.[3] We conclude that the language at issue is ambiguous because it is equally susceptible to more than one meaning. *Fluor Enterprises*, 477 Mich at 177-178 n 3.

As previously stated, when construing a statute, this Court cannot insert a provision because it would have been wise of the Legislature to have done so in order to effectuate the statute's purpose. *Houghton Lake*, 255 Mich App at 142. Rather, an ambiguous statute must be given a construction that best effects the Legislature's intent. *Id.* We conclude that the statute at issue is ambiguous because it fails to specify the subject matter of the weighted average. As a result of the ambiguity, we must effect the Legislature's intent by examining the

---

[3] Although petitioner submitted a rate increase for its HO-2, HO-4, and HO-6 lines of insurance, MCL 500.2930a only refers to HO-2 insurance and HO-3 insurance. The statute does not define the types of insurance that are available.

object of the statute in light of the harm it is designed to remedy, apply a reasonable construction to accomplish the Legislature's purpose, and read *in pari materia* statutes to produce a harmonious whole and reconcile inconsistencies. *World Book*, 459 Mich at 416; *Marquis*, 444 Mich at 644. Additionally, as a result of the ambiguity, we must give respectful consideration to the agency's construction of the statute and provide cogent reasons for overruling the agency's interpretation. *Rovas*, 482 Mich at 103. The agency's interpretation will be particularly helpful when examining this doubtful provision. *Id.* at 108.

As noted earlier, the Insurance Code was enacted to ensure that automobile owners and homeowners could purchase insurance at reasonable and fair rates. To ensure that the public is protected, the insurance commissioner was created to examine issues affecting the industry. MCL 500.202. The commissioner has broad authority to examine the books of any insurer and ensure that the companies operate under acceptable standards and practices. *Mich Mut Life*, 129 Mich at 109; MCL 500.116(c); MCL 500.205; MCL 500.222(1). Petitioner was created to provide property insurance to qualified individuals who were unable to obtain insurance in the regular market. See MCL 500.2901 *et seq.* Petitioner's plan of operation must ensure "the fair, reasonable, equitable, and nondiscriminatory manner of administering the pool . . . ." MCL 500.2920(2). The insurance commissioner has the authority to supervise and regulate the actions taken by petitioner. MCL 500.2941.

Reading the insurance statutes *in pari materia*, we conclude that the insurance commissioner had the authority to review the proposed rate increase and to determine that petitioner's interpretation did not con-

form to the legislative intent. The purpose of the
Insurance Code is to provide fair and reasonable rates
of insurance. The actuary's report in this case noted
that a decrease would have occurred using other accept-
able actuarial methods. However, when applying base
rates without any discounts to calculate the rates
charged by the pool, an increase of 18.9 percent was
proposed to the commissioner. The insurance commis-
sioner was entitled to determine that this method was
contrary to petitioner's plan of operation because it
failed to ensure the fair, reasonable, equitable, and
nondiscriminatory manner of administering the pool.
When respondents' analyst requested a different
method of calculation consistent with the actuary's
report, petitioner did not demonstrate that its preferred
method of calculation was fair, reasonable, equitable,
and nondiscriminatory. On its face, the computation by
the actuary and the rate increase sought by petitioner
does not appear to be fair and equitable. Persons
seeking insurance in the regular market are quoted a
base rate, but then given discounts to arrive at the
ultimate premium that is charged. Petitioner's rates
would be set on the weighted average of the base rate
charged, without taking into consideration that the
base rate was inflated to account for the discounts
given. Therefore, the circuit court erred by reversing
the commissioner's decision.

Furthermore, affording the agency's construction of
the statute respectful consideration, there are no cogent
reasons for overruling the agency interpretation. *Ro-
vas*, 482 Mich at 103. Review of the administrative
record[4] reveals that the commissioner received petition-

---

[4] Petitioner repeatedly contends that respondents do not have record
evidence to support their position and that an administrative record does
not exist. On the contrary, the correspondence between petitioner and

er's request for a rate increase of 18.9 percent. In the actuary's report, it was noted that there were problems arising from the methodology employed. Despite the fact that the statute at issue required an average of the 10 voluntary market insurer groups with the largest premium volume, none of those 10 writers of insurance were currently using the same territorial definitions in Michigan. Additionally, petitioner had recently revised its territory ratings from 25 to 67.[5] The report also noted that a number of the top 10 writers of insurance did not write form two (HO-2) homeowners insurance and, therefore, form three (HO-3) factors were applied from companies that did not write form two insurance. The actuary's report was calculated using base rates and did not account for discounts granted by the industry.

In response to the actuary's report, the commissioner's office requested information regarding the use of the base rate as opposed to the ultimate premium charged to the insured. When petitioner refused to provide additional information or recalculate the rates, the insurance commissioner issued an order disapproving of the proposed rate increase. In his order, the insurance commissioner noted that the industry had altered its methodology for calculating base rates and premiums. Specifically, the commissioner stated that insurance companies deliberately inflated the base rates and discounts were then

the commissioner and his office and the actuary's report were transmitted as part of the administrative record to this Court.

[5] Although MCL 500.2930a provides that petitioner's rating territories would be the same as those used by the largest number of insurers by premium volume, the actuary noted that the insurance companies did not have consistent rating territories. The lack of consistency will affect the calculation of rates, an area that the commissioner is charged with regulating, and his authority to oversee the insurance industry.

subtracted from the base rate. Because of this methodology, the commissioner concluded that base rates no longer had any meaningful correlation to expected losses. Therefore, the commissioner opined that petitioner's use of base rates was improper, unfairly discriminatory, and inconsistent with a plan of operation that is fair, reasonable, equitable, and nondiscriminatory.

Giving respectful consideration to the agency's determination, we cannot find any cogent reasons to reverse the insurance commissioner's disapproval of the rate increase. *Rovas*, 482 Mich at 103. Insurance laws are to be liberally construed in favor of the public. *Mich Surety*, 364 Mich at 325; *Tevis*, 283 Mich App at 81. Administrative agencies were created so that entities with specialized knowledge and expertise would address regulatory matters, and this expertise is necessary to resolve regulatory issues. *Travelers Ins Co*, 465 Mich at 198. Here, the insurance commissioner was aware of the prior calculations and acceptance of rate approvals. Because of his experience and expertise, the insurance commissioner was aware of the fact that a disparity had been created between base rates and premiums charged to consumers because of the industry's adoption of inflated base rates. Additionally, data had to be extrapolated because of the inconsistencies in the number of rating territories and the number of insurers that did not provide form two (HO-2) insurance.[6]

---

[6] Although the Legislature referred to certain lines of insurance in MCL 500.2930a, it did not define those terms. The insurance commissioner is aware of the lines of insurance despite the lack of statutory specifications. HO-2 (home) covers the dwelling and other structures, but only insures against named perils. HO-3 (home) is the most common policy and covers against a wide range of perils even if not

Petitioner contends that the insurance commissioner lacks the authority to disapprove of the use of base rates for calculating the weighted average because use of base rates has been acceptable for the last 28 years. However, the plain language of the statutes at issue reveals that the insurance commissioner has the continuing authority to examine the practices of insurance companies to determine the propriety of their rates. As noted, administrative agencies are legislative creations staffed by individuals of special competence and expertise to address issues of a regulatory nature. *Id.* An agency's expertise is necessary in areas of regulatory matters where judges and juries have little familiarity. *Id.* The insurance commissioner has the broad authority to supervise and regulate the actions by petitioner. MCL 500.2941 ("The operation of the pool shall at all times be subject to the supervision and regulation of the commissioner."). Petitioner's plan of operation must ensure "the fair, reasonable, equitable, and nondiscriminatory manner of administering the pool . . . ." MCL 500.2920(2). The insurance commissioner was placed in his position to ensure that applicants for insurance are charged fair and reasonable rates. The commissioner, in the course of his supervision, con-

---

specifically designated in the policy. HO-4 is for renters and covers only the contents of the home. HO-6 is for condominium owners and is similar to renters' insurance in that the owner owns the building jointly with other owners in the co-operative. This insurance covers the specific unit and the contents therein. See The Truth About Insurance.com, *Types of Homeowners Insurance* <www.thetruthaboutinsurance.com/types-of-homeowners-insurance/> (accessed May 20, 2010). This lack of specificity in the statute indicates the Legislature's intention to allow the insurance commissioner to apply his expertise to regulate and supervise through the plan of adoption and through rules and regulations. See MCL 500.2920(4) and MCL 500.2941.

cluded that the industry had begun deliberately inflating its base rates to promote the use of discounts. This shift resulted in base rates having little connection to the premiums actually paid in the regular market. Therefore, when individuals sought insurance from petitioner, as a last resort, the use of base rates to calculate their premiums was no longer fair, reasonable, equitable, and nondiscriminatory. We note that when respondents' analyst requested additional information, petitioner did not provide a justification for the rates charged to demonstrate that they were fair, reasonable, and equitable. Rather, petitioner merely asserted that this was the methodology previously employed and then filed suit to obtain its rate increase. The position of insurance commissioner was created to ensure that the insurance industry does not skew the underlying methodology to increase its rates. Petitioner's reliance on prior rate approvals is misplaced and contrary to the stated need for the Insurance Code.[7]

In summary, the statutory provision at issue, MCL 500.2930a(1), is ambiguous because it fails to identify the subject matter to be calculated as a weighted

---

[7] We note that petitioner also contends that the insurance commissioner "abandoned" his rationale for rejecting the rate increase and in the circuit court, for the first time, alleged that the statute was ambiguous. The insurance commissioner submitted his disapproval of the rate increase in a written order. There is no indication that the commissioner withdrew this order or altered his position. Rather, petitioner did not provide further justification for its rate increase to the commissioner's analyst, as requested, but filed suit to obtain its rate increase. In the circuit court petition, it was asserted that the commissioner's actions were contrary to law, exceeded his statutory authority, and were not supported by the record and competent evidence. Respondents' argument regarding the ambiguity of the statute was in response to the legal issues raised in the petition and did not reflect "abandonment" of the commissioner's reasons for disapproving the rate increase.

average. The insurance commissioner is charged with oversight of the insurance industry to ensure fair and reasonable rates to the general public. Petitioner was created to allow qualified persons to obtain insurance unavailable in the regular market. Petitioner is subject to supervision and regulation by the insurance commissioner, and petitioner must follow a plan of operation that ensures fair, reasonable, equitable, and nondiscriminatory maintenance of the pool. In his expertise, the insurance commissioner concluded that petitioner's calculation of territorial rates was improper because it was premised on the base rates of the 10 insurers with the largest premium volume in this state. The insurance commissioner acknowledged that base rates may have been used in the past, but he also recognized that, in recent years, base rates were deliberately inflated to account for discounts that ultimately lead to the premium charged to the insured.

Petitioner's own actuary acknowledged that use of other acceptable actuarial methods would result in a decrease in rates, but the method employed in years past led to the requested 18.9 percent increase. Despite inquiry from the commissioner's analyst regarding the propriety of the calculation, petitioner did not defend the fairness, reasonableness, equitableness, and manner of administering the pool and the consistency with its plan of operation. Rather, petitioner filed suit to obtain its 18.9 percent increase. Although statutory construction is the domain of the judiciary, MCL 500.2930a(1) is ambiguous because it omits the subject matter from which the weighted average is computed. After reviewing the Insurance Code, the authority of the insurance commissioner, and the responsibilities of the pool, we conclude that respondents' construction of the statute is in accordance with the intent of the

Legislature. Furthermore, cogent reasons[8] do not exist for overruling respondents' interpretation.

Reversed.

DAVIS, J., concurred.

BANDSTRA, P.J. *(concurring)*. I concur with the majority that this matter must be reversed for the reasons stated. In addition, I write separately to point out a complementary reason that reversal is warranted. As the majority notes, the statutory language at issue does not specify the subject matter to be calculated as a weighted average: "rates charged in each territory by the pool for home insurance shall be equal to the weighted average of" an unspecified variable pertaining to certain market insurer groups. MCL 500.2930a(1). While the statute is thus ambiguous, logically it seems quite defensible to conclude that the subject matter of the "weighted average" is the "rates charged" specified earlier in this clause. The rates charged by the subject insurer groups, again as a matter of logic, are the amounts that people actually pay for their insurance, i.e., the premiums, which result from base rates as they have been reduced by applicable discounts. This is

---

[8] At oral argument, counsel for petitioner asserted that the pool was operating at a loss. Although we have the administrative record, there is no documentary evidence contained in the file to demonstrate that petitioner was operating at a deficit. Curiously, in response to respondent's analyst, petitioner failed to provide documentary evidence to sustain its need for the requested increase. Finally, we recognize that the commissioner concluded that a six percent decrease was appropriate if rates were calculated properly. The underlying basis for the amount of the decrease is not contained in the lower court record. However, both petitioner's actuary and the commissioner concluded that a decrease was warranted. The amount is irrelevant to our disposition on appeal. Rather, our conclusion is premised on the statutory authority given to an agency charged with addressing regulatory issues of a monitored industry.

respondents' position, and this analysis belies petitioner's argument that the missing variable to be averaged is, simply, the base rates. Thus, the majority's analysis correctly leads us to conclude what a close reading of the statutory language itself suggests.